# PD-1265-15

PD-1265-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 9/29/2015 5:54:19 PM
Accepted 9/30/2015 3:31:19 PM
ABEL ACOSTA
CLERK

NO. _____

## IN THE COURT OF CRIMINAL APPEALS

### OF TEXAS
### AUSTIN, TEXAS

KEVIN FAHRNI,

                                                Appellant

v.

STATE OF TEXAS,

                                                Appellee

## APPELLANT'S
## PETITION FOR DISCRETIONARY REVIEW

No. 06-14-00148-CR
Court of Appeals
For the Sixth District of Texas
at Texarkana, Texas

On appeal from Cause Number 10 F 0484 005
in the District Court of Bowie County, Texas
Honorable Ralph Burgess, Judge Presiding

ORAL ARGUMENT IS NOT REQUESTED

FILED IN
COURT OF CRIMINAL APPEALS

September 30, 2015

ABEL ACOSTA, CLERK

Alwin A. Smith
SBN: 18532200
602 Pine Street
Texarkana, Texas 75501
903-792-1608
903-792-0899 Fax
al@alwinsmith.com
Attorney for Appellant

## IDENTITY OF JUDGE, PARTIES AND COUNSEL

Pursuant to TEX. R. APP. P. 38.1(a) (2005), the parties to this suit are as follows:

1. **Kevin Fahrni** is the Appellant and was the Defendant in trial court.

2. **The State of Texas,** by and through the Bowie County Criminal District Attorney's Office, 601 Main Street, Texarkana, Texas, is the Appellee and prosecuted this case in the trial court.

The trial attorneys were as follows:

1. **Kevin Fahrni** was represented by **Joe Tyler** .

2. **The State of Texas** was represented by **Jerry D. Rochelle,** District Attorney and **Samantha Oglesby**, Assistant District Attorney.

The trial court judge was **Hon. Ralph K. Burgess,** 5th District Court, Bowie County, Texas.

The appellate attorney is as follows:

1. **Kevin Farhni** is represented by **Alwin A. Smith**, 602 Pine Street,

Texarkana, Texas 75501.

2.    **The State of Texas** is represented by **Jerry D. Rochelle**, District Attorney and **Lauren N. Sutton**, Assistant District Attorney, 601 Main Street, Texarkana, Texas 75501.

# TABLE OF CONTENTS

**Page**

Identity of Judge, Parties and Counsel . . . . . . . . . . . . . . ii

Table of Contents . . . . . . . . . . . . . . iv

Index of Authorities . . . . . . . . . . . . . . v

Statement Regarding Oral Argument . . . . . . . . . . . . . . 1

Statement of the Case . . . . . . . . . . . . . . 1

Statement of Procedural History . . . . . . . . . . . . . . 2

Ground for Review . . . . . . . . . . . . . . 3

> The Court of Appeals committed error
> when it misconstrued the provisions of the
> amendment by the Legislature in 2011 and
> held that the admission of the
> testimony of extraneous offenses under
> 38.37(2) as amended in 2013, was proper
> when the offense was committed prior to
> the amendment of 38.37 in 2011.

Argument . . . . . . . . . . . . . . 3

Prayer . . . . . . . . . . . . . . 10

Certificate of Compliance . . . . . . . . . . . . . . 11

Certificate of Service . . . . . . . . . . . . . . 11

Appendix . . . . . . . . . . . . . . 12

# INDEX OF AUTHORITIES

Cases                                                          Page

*Boykin v. State,* 818 S.W.2d 782, 785 (Tex.Crim.App. 1991) . . . . . 8

*Camacho v. State,* 765 S.W.2d 431 (Tex.Crim.App. 1989) . . . . . . . 8

*Coit v. State,* 808 S.W.2d 473, 475 (Tex.Crim. App. 1991) . . . . . . . 8

*Garcia v. Dial,* 596 S.W.2d 524, 527 (Tex.Crim.App. 1980) . . . . . . 8

*Marin v. State,* 851 S.W.2d, 275, 279 (Tex.Crim.App. 1993) . . . . . 7

*Powell v. State,* 897 S.W.2d 307, 323 (Tex. Crim. App. 1994) . . . . 7

*PPG Indus., Inc. v. JMB/Houston Centers Partners Ltd,*
    *P'ship* 146 S.W.3d 79, 103 (Tex. 2004)    . . . . . . . . . . . . . . . . 10

*Shipp v. State,* 331 S.W.3d 433 (Tex. Crim. App. 2011) . . . . . . . . . . 3




Other:

Texas Constitution, Art. II, §1                . . . . . . . . . . . . . . . . 8
Texas Government Code, §311.031               . . . . . . . . . . . . . . . . 8, 10
Texas Code Criminal Procedure, Art. 38.37     . . . . . . . . . . . . . . . 3, 4, 5, 6,7
Texas Penal Code, §22.021                      . . . . . . . . . . . . . . . . 3
Tex. R. App. Pro.  66.3(d)                     . . . . . . . . . . . . . . . . 3
Rule of Evidence 404(b)                        . . . . . . . . . . . . . . . . 6


Texas Session Law Service 2011 Eighty-Second
    Legislature, 2011 Regular Session, Chapter 1
        Approved April 21, 2011                . . . . . . . . . . . . . . . . 6

**TO THE HONORABLE JUDGES OF THE COURT OF CRIMINAL APPEALS:**

NOW COMES **Kevin Fahrni**, Appellant in this cause, by and through his attorney of record, Alwin A. Smith and, pursuant to the provisions of Tex.R.App.Pro. 66.1 et seq, moves this Court to grant discretionary review and in support would show as follows:

## STATEMENT REGARDING ORAL ARGUMENT

Counsel for Appellant does not believe that oral argument is necessary for the Court to make a ruling in this matter.

## STATEMENT OF THE CASE

On June 5, 2014, a jury convicted the Appellant Aggravated Sexual Assault of a Child and sentenced him to prison for Fifty (50) years. CR pg. 221. A motion for new trial was filed on June 25, 2014. CR pg. 225. The Appellant filed his notice of appeal to the Court of Appeals for the Sixth Judicial District in Texarkana on August 19, 2014.

## STATEMENT OF PROCEDURAL HISTORY

The Appellant's conviction was affirmed by the Court of Appeals on August 31, 2015, in <u>Farhni v. State,</u> __ S.W.3d ___, 2015 WL 5099123 (Tex.App.–Texarkana, Delivered August 31, 2015). The Appellant did not file a motion for rehearing. This petition is due on September 30, 2015.

## GROUND FOR REVIEW

**The Court of Appeals committed error when it misconstrued the provisions of the amendment by the Legislature in 2011, and held that the admission of the testimony of extraneous offenses under 38.37(2) as amended in 2013, was proper when the offense was committed prior to the amendment of 38.37 in 2011.**

## ARGUMENT

Review by this Court is proper pursuant to Tex. R. App. Pro. 66.3(d) because the Court of Appeals' decision misconstrued the 2011 amendment to Article 38.37, and the 2013 amendment as it should have been applied to the Appellant. _Shipp v. State_, 331 S.W.3d 433 (Tex.Crim.App. 2011).

The Appellant was indicted on August 12, 2010, for the offense of Aggravated Sexual Assault of a Child, alleged to have been committed on or about November 1, 2008, pursuant to §22.021 of the Texas Penal Code.

During the trial of the Appellant, the State was allowed to introduce evidence of an alleged indecency of a child by the Appellant against the victim's brother, and an alleged aggravated sexual assault of a child victim that supposedly occurred in 1999 or 2000, in Arkansas. Vol. 4, pgs. 237-68; Vol. 5, pgs. 17-44.

3

The appellate court acknowledged that the Appellant was alleged to have committed his crime prior to the 2011, and 2013, amendments to Article 38.37. Opinion at 6.

At a pre-trial hearing conducted by the trial court on April 11, 2011, Appellant's trial counsel brought before the trial court, Appellant's Motion to Suppress Evidence of a prior allegation accusing the Appellant of a sexual offense against a child that supposedly occurred in Arkansas. C.R. pg. 42, Vol. 2, pgs. 4-7. During the hearing on the motion, the Assistant District Attorney stated, as it concerned the admission of the extraneous offense, "I can't imagine we would intend introducing it in the case - in the State's case in chief." CR Vol. 2, pg. 6. At the time of this statement by the Assistant District Attorney, Article 38.37 of the Texas Code of Criminal Procedure did not provide for the admission of extraneous offenses that were not perpetrated against the victim listed in the indictment. Tex. C. Crim. Pro. 38.37 (Vernon's 2011). It was not until the Amendment to 38.37, that took effect on September 1, 2013, that allowed the introduction of extraneous offenses against other victims. Tex. C. Crim. Pro. 38.37 (Vernon's 2014).

After the April 11, 2011 hearing, there was not a hearing that discussed the State's attempt to introduce the extraneous offense from Arkansas until

4

the hearing conducted on May 5, 2014, three years later. At this hearing, Appellant's counsel argued for the exclusion of the extraneous offense in both their Motion to Suppress and their Motion in Limine. C.R. Vol. 2, pg. 71.

After the May 14th hearing the Appellant filed an additional Motion to Exclude Evidence with the trial court. CR, pg. 158. In that motion, for the first time, the Appellant raised the issue with the trial court that the Statute had been amended since his offense date and his indictment. Additionally, the Appellant raised the notice requirement as stated in the Amended Statute and that it had not been complied with. CR. pg. 158. On June 2, 2014, the trial court conducted another pre-trial hearing in this matter. Vol. 2, pgs. 46-64. At this pre-trial hearing the Appellant argued that there had been an amendment to Article 38.37, by the 83rd Legislature, and that as the Appellant had been indicted in 2011, the new amendment should not be used against him. Vol. 2, pg. 53. The State argued that the 2012 Amendment did not bar the State from using the extraneous offense, as the Amendment stated that it was applicable to any proceeding that took place on or after the effective date and that the Appellant's trial was a proceeding taking place after the amendment. Vol. 2, pgs. 53-4.

On June 3rd, 2014, prior to selecting the jury in the Appellant's case, the

trial court again took up the matter of the extraneous offense and the 2012 Amendment to Article 38.37. Vol. 3, pg. 5. At the conclusion of the hearing, the trial court ruled that the 2013 Amendment did not preclude the State from introducing the extraneous offense in its case in chief. Vol. 3, pg. 9. Additionally, the trial court later ruled that Article 38.37, made it unnecessary for there to be a finding of similarity as would be required under Rule of Evidence 404(b). Vol. 3, pgs. 14-5.

In 2011, the 82nd Legislature amended Article 38.37, by rewriting Section One of the Statute. In passing this Amendment, the Legislature made their intentions clear on who this Amendment should affect. "The change in law made by this Act applies only to an offense committed on or after the effective date [Sept. 1, 2011] of this Act. An offense committed before the effective date of this Act is governed by the law in effect on the date the offense was committed, and the former law is continued in effect for that purpose. For purposes of this section, an offense was committed before the effective date of this Act if any element of the offense occurred before that date." Vernon's Texas Session Law Service 2011 Eighty-Second Legislature, 2011 Regular Session, Chapter 1, Approved April 21, 2011.

The Court of Appeals, however, ruled that the subsequent amendment

to Article 38.37, in 2013, which amended the statute "by adding the current Section 2" was applicable to the Appellant's case and therefore the extraneous offenses used by the State were admissible at his trial. Opinion at 6.

It is clear from the language of the 82nd Legislature that their intent was clear; that being, anyone who committed an act covered by the Statute prior to the 2011 Amendment was to be prosecuted using the Statute as written in 1995. As this Court has noted when discussing the same language as it applied to a change in the death penalty sentencing law, "the mandate of the Legislature is unequivocal. Not only did the Legislature mandate that the amendments were only effective for offenses committed 'on or after September 1, 1991,' but the Legislature also specifically mandated that for offenses committed prior to September 1, 1991 the version of Article 37.071 in effect on the date of the offense would apply." _Powell v. State_, 897 S.W.2d 307, 323 (Tex.Crim.App. 1994).

This Court felt so strongly about this language, it went on to state: "The effective dates of statutes are absolute requirements. Absolute requirements and prohibitions are independent of the litigants' wishes". _Marin v. State_, 851 S.W.2d 275, 279 (Tex. Crim. App. 1993). The implementation of these absolute requirements and prohibitions is not optional and is therefore, neither

7

waivable nor forfeitable by any party. _Id._ In _Marin_, we noted that the jurisdiction of the courts is the clearest example of such absolute systemic requirements and prohibitions. _Id._ As we noted in _Marin_, even if he consents, a defendant may not be tried in a County Court at Law for a felony offense. _Id._, citing e.g., _Garcia v. Dial_, 596 S.W.2d 524, 527 (Tex. Crim. App. 1980). Besides jurisdiction, we can think of no less optional a requirement than the "effective date" of a statute." _Id_ at 324-5.

This Court has consistently stated that as it pertains to statutory construction, "we interpret statutes .... to effectuate the 'collective' intent or purpose of the legislators who enacted the legislation". _Camacho v. State_, 765 S.W.2d 431 (Tex.Cr.App.1989). We do so because our state constitution assigns the law making function to the Legislature while assigning the law interpreting function to the Judiciary. See Tex. Const. Art. II, §1." _Boykin v. State_, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991). "Where the statute is clear and unambiguous, the Legislature must be understood to mean what it has expressed, and it is not for the courts to add or subtract from such a statute". _Coit v. State_, 808 S.W.2d 473, 475 (Tex.Cr.App.1991) (quoting _Ex parte Davis_, 412 S.W.2d 46, 52 (Tex.Cr.App.1967)). _Boykin_, at 785.

Additionally, the Court of Appeals, failed to apply §311.031 of the Texas

8

Government Code in analyzing the amendments to the article:

"(a) Except as provided by Subsection (b), the reenactment, revision, amendment, or repeal of a statute does not affect:

(1)     the prior operation of the statute or any prior action taken under it;

(2)     any validation, cure, right, privilege, obligation, or liability previously acquired, accrued, accorded, or incurred under it;

(3)     any violation of the statute or any penalty, forfeiture, or punishment incurred under the statute before its amendment or repeal; or

(4)     any investigation, proceeding, or remedy concerning any privilege, obligation, liability, penalty, forfeiture, or punishment; and the investigation, proceeding, or remedy may be instituted, continued, or enforced, and the penalty, forfeiture, or punishment imposed, as if the statute had not been repealed or amended.

(b)     If the penalty, forfeiture, or punishment for any offense is reduced by a re-enactment, revision, or amendment of a statute, the penalty, forfeiture, or punishment, if not already imposed, shall be imposed according to the statute as amended.

(c)     The repeal of a statute by a code does not affect an amendment, revision, or reenactment of the statute by the same legislature that enacted the code. The amendment, revision, or reenactment is preserved and given effect as part of the code provision that revised the statute so amended, revised, or reenacted.

(d)     If any provision of a code conflicts with a statute enacted by the same legislature that enacted the code, the statute controls."

9

Tex. Gov't Code §311.031 (Vernon's 2014). By failing to apply §311.031, the Court of Appeals ignored the legislative mandate that an amendment to a statute with the language used in the 2011 Amendment is a bright line rule and the law as written prior to the 2011, Amendment should be applied to the Appellant. "Texas's general savings clause is found in §311.031 of the Government Code, which provides that the repeal or amendment of a statute does not affect the statute's prior operation or any rights previously acquired under it. Tex. Gov't Code §311.031(a)." *PPG Indus., Inc. v. JMB/Houston Centers Partners Ltd. P'ship*, 146 S.W.3d 79, 103 (Tex. 2004).

## PRAYER FOR RELIEF

Appellant respectfully prays that this Court grant review and, after full briefing on the merits, issue an opinion resolving this important issue so that the bench and bar of this state will know how to address similar issues in the future.

Respectfully submitted,

*/s/Alwin A. Smith*
Alwin A. Smith
TBN: 18532200
al@alwinsmith.com
602 Pine Street
Texarkana, Texas 75501
903/792-1608
903/792-0899 Fax

## Certificate of Compliance

Pursuant to the Tex. R. App. P. 9.4(i)(3), I hereby certify that this brief contains 1,748 words (excluding the caption, table of contents, table of authorities, signature of proof of service, certification and certificate of compliance). This is a computer-generated document created in Wordperfect, using 14 point typeface for all text. In making this certificate of compliance, I am relying on the word count provided by the software used to prepare the document.

*/s/Alwin A. Smith*


## Certificate of Service

This is to certify that a true and correct copy of Appellant's Petition for Discretionary Review has been forwarded to the Appellant, Kevin Fahrni,

# APPENDIX



# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-14-00148-CR

KEVIN FAHRNI, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 5th District Court
Bowie County, Texas
Trial Court No. 10F0484-005

Before Morriss, C.J., Moseley and Carter,* JJ.
Opinion by Justice Carter

*Jack Carter, Justice, Retired, Sitting by Assignment

## O P I N I O N

Kevin Fahrni was convicted of aggravated sexual assault of a child[1] by a Bowie County jury. The jury assessed his punishment at fifty years' imprisonment in the Texas Department of Criminal Justice Correctional Institutions Division. On appeal, Fahrni complains that the trial court erred (1) in allowing evidence of extraneous offenses under Article 38.37 of the Texas Code of Criminal Procedure, (2) in allowing a sexual assault nurse examiner (SANE) to testify regarding out-of-court statements of the child victim, (3) in denying him the opportunity to cross-examine the State's expert witness regarding statements made by the child victim, and (4) in allowing improper jury argument by the State. Fahrni also complains that since there was no effective amendment of the indictment, the trial court erred in charging the jury on an offense date that varied from the date used in the original indictment. We find that the trial court did not abuse its discretion in its evidentiary rulings, that there was no improper jury argument by the State, and that the amendment to the indictment was effective. Therefore, we affirm the judgment of the trial court.

## I.    Background

Sandra, Sarah's[2] mother, began dating Fahrni while she was finishing nursing school. At the time, Sarah was around seven years old, and her brother, Sam, was around six. At Fahrni's suggestion, Sandra and her children moved into his house and resided with him for approximately

---

[1]*See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i), (2)(B) (West Supp. 2014).

[2]Pursuant to Rule 9.10 of the Texas Rules of Appellate Procedure, the child victim will be referred to as "Sarah." *See* TEX. R. APP. P. 9.10. In order to further protect Sarah's identity, her mother will be referred to as "Sandra," her brother as "Sam," and her grandmother as "Sally." These are all fictitious names.

four years, until October 2008. After graduating from nursing school, Sandra began working at a local hospital. In 2007, Sandra started working nights, and Fahrni took care of Sarah and Sam while their mother was at work. Sarah and Sam testified that when they would ask Fahrni if they could stay with their grandparents, Fahrni would refuse to let them.

Sarah testified that while her mother was at work, Fahrni would often wrestle on the ground with Sam and her. Acting like it was a game, Fahrni would pull their pants down and grab them on their butts. At other times while Sandra was at work, Fahrni would join Sarah and Sam in the swimming pool. While he was playing with them, Fahrni would pull their swim trunks or bottoms down their legs and touch their naked butts. Fahrni never played these games when Sandra was around. At the time these incidents occurred, Sarah was eleven years old, and Sam was nine.

One night while Sam was in his bedroom, Sarah was lying on the living room floor in her nightgown watching television. Fahrni was lying on the couch next to her, when she felt him touch her underneath her panties between her legs. Sarah testified that she felt his finger touch both the outside and inside of her sexual organ. She looked at him, and he said, "I thought you were asleep." He stopped and did not say anything else to her, and she got up and went to her room. She tried to tell her mother about the incident in the summer of 2008, but only told her that Fahrni was messing with her and did not tell her that anything sexual had happened. In late October 2008, Sarah told her grandmother, Sally, about the incident and made her promise not to tell anyone. However, Sally discussed the situation with her husband, and they reported the incident to the police a few days after Sarah's outcry.

3

## II.  Extraneous Offenses

During the trial, the State called Sam as a witness. Sam testified that when his mother was at work, Fahrni would often wrestle with Sarah and him, pulling down their pants and grabbing their butts. He also testified that Fahrni would sometimes play with them in the pool and pull their swim trunks down their legs and touch their naked butts. He said that Fahrni would act like this was a game and that he never did those things when Sandra or anyone else was around.

The State also called Kathy,[3] the daughter of one of Fahrni's former girlfriends, to testify during the trial. Kathy testified that her mother had begun dating Fahrni when Kathy was approximately five years old. Kathy, her mother, and her brother moved into Fahrni's house and resided with him for five or six years. When her mother began working nights, Fahrni looked after Kathy. She testified that when she was about six or seven, Fahrni began touching her inappropriately while her mother was at work. She related that one night, after Fahrni had sent her brother to bed, she was lying on her mother's bed watching television when she felt Fahrni remove her underwear and stick his fingers in her vagina. She also testified that on a different night also when her brother was sleeping, she was sitting on Fahrni's lap in the living room when Fahrni tried to put his hand down the front of her pants. According to Kathy, she looked at him, and he said, "'I saw a bug.'" Although she tried to tell her mother about it at the time, she only told her that Fahrni had "French kissed" her. She explained that she was afraid of getting in trouble if she told her mother what really happened. Her mother confronted Fahrni, and Kathy did not recall him

---

[3]Pursuant to Rule 9.10 of the Texas Rules of Appellate Procedure, this child victim will be referred to as "Kathy." *See* TEX. R. APP. P. 9.10.

4

touching her afterward. Several years later, and long after they had moved out of Fahrni's house, Kathy told her mother what really happened. Her mother reported the incident to law enforcement authorities.

## A. The History of Article 38.37

Rule 404 of the Texas Rules of Evidence forbids the admission of other crimes, wrongs, or acts of a defendant—extraneous-offense evidence—to prove his character for the purpose of showing that he acted in accordance with that character on some particular occasion. TEX. R. EVID. 404(b), 60 TEX. B.J. 1129, 1134 (1997);[4] *Graves v. State*, 452 S.W.3d 907, 913 (Tex. App.— Texarkana 2014, pet. ref'd). However, such evidence may be admissible if introduced for purposes other than character conformity. *See* TEX. R. EVID. 404(b), 60 TEX. B.J. 1129, 1134 (1997); *De La Paz v. State*, 279 S.W.3d 336, 343, 345 (Tex. Crim. App. 2009); *Montgomery v. State*, 810 S.W.2d 372, 387–88 (Tex. Crim. App. 1990) (op. on reh'g). Further, Rule 405 generally limits the methods by which character evidence, when admissible, may be proven. TEX. R. EVID. 405, 60 TEX. B.J. 1129, 1134 (1997).

In 1995, the Legislature enacted Article 38.37 of the Texas Code of Criminal Procedure, which renders "evidence of [a defendant's] other crimes, wrongs, or acts" admissible, notwithstanding Rules 404 and 405, in the prosecution of that defendant for certain criminal

---

[4]The Texas Rules of Evidence were amended by orders of the Texas Supreme Court and the Texas Court of Criminal Appeals, effective April 1, 2015. The Texas Rules of Evidence cited in this opinion are the Rules in effect in June 2014, when this case was tried. To facilitate access to the text of the June 2014 version of the Rules, each citation to the Texas Rules of Evidence will be followed by a citation to the volume and page of the Texas Bar Journal in which the June 2014 version of the cited Rules first appeared.

offenses, including aggravated sexual assault of a child.[5] In its original form and in its 2008 form, when Fahrni was alleged to have sexually assaulted Sarah, only extraneous offenses committed against the complaining child victim were admissible under Article 38.37. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37, § 1(b) (West Supp. 2014). In 2011, the Legislature amended Article 38.37 and expanded its scope by adding new criminal offenses to the list of prosecutions in which it applies. Specifically, the amendment made Article 38.37 applicable in prosecutions of the offenses of sexual performance by a child, trafficking in children, and compelling prostitution of a child.[6] The enacting provision of the 2011 amendment established its effective date as September 1, 2011, and stated, "The change in law made by this Act applies only to an offense committed on or after the effective date of this Act. An offense committed before the effective date of this Act is governed by the law in effect on the date the offense was committed."[7] In 2013, the Legislature again amended Article 38.37 by adding the current Section 2, which, notwithstanding Rules 404 and 405, makes evidence of certain extraneous offenses committed by the defendant, including aggravated sexual assault of and indecency with a child, admissible "for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant." *See* TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2 (West Supp. 2014). Thus, after the 2013 amendments went into effect on September 1, 2013, evidence of

---

[5]*See* Act of May 28, 1995, 74th Leg., R.S., ch. 318, § 48, 1995 Tex. Gen. Laws 2734, 2748–49 (amended 2005, 2011, 2013) (current version at TEX. CODE CRIM. PROC. ANN. art. 38.37 (West Supp. 2014)).

[6]*See* Act of April 7, 2011, 82d Leg., R.S., ch. 1, § 2.08, 2011 Tex. Gen. Laws 1, 6 (amended 2013) (current version at TEX. CODE CRIM. PROC. ANN. art. 38.37 (West Supp. 2014)).

[7]*See* Act of April 7, 2011, 82d Leg., R.S., ch. 1, §§ 7.01–.02, 2011 Tex. Gen. Laws 1, 17 (amended 2013).

6

certain extraneous offenses committed by the defendant against a non-complaining child victim became admissible under Article 38.37. Like the 2011 amendment, the 2013 amendment had no retroactive effect.[8]

### B.    Arguments of the Parties

On appeal, Fahrni contends that the trial court erred in admitting the testimony of Sam and Kathy under Article 38.37. He argues that since he is alleged to have committed the offense in 2008, the law applicable to his case is the law in effect in 2008. Fahrni bases his argument on the enacting paragraph of the 2011 amendment to Article 38.37, which provides that offenses committed before the effective date of that amendment—September 1, 2011—are governed by the law in effect on the date the offense was committed. The State argues that the 2011 amendment to Article 38.37 is irrelevant because it only concerned evidence of extraneous offenses involving the complaining victim, which is not implicated by the facts of this case. Rather, the State's argument continues, evidence of extraneous offenses involving a non-complaining child victim first became admissible under the 2013 amendment to Article 38.37. Therefore, the State contends, the 2013 amendment and its enacting paragraphs determine what law controls here. Finally, the State contends that Fahrni concedes on appeal that if the 2013 amendments apply, then the evidence of extraneous offenses was admissible.

### C.    Standard of Review

We review a trial court's ruling on the admissibility of extraneous-offense evidence under an abuse-of-discretion standard. *De La Paz*, 279 S.W.3d at 343; *Hernandez v. State*, 351 S.W.3d

---

[8]*See* Act of May 17, 2013, 83d Leg., R.S., ch. 387, §§ 2–3, 2013 Tex. Gen. Laws 1167, 1168.

156, 160 (Tex. App.—Texarkana 2011, pet. ref'd); *Duren v. State*, 87 S.W.3d 719, 728 (Tex. App.—Texarkana 2002, pet. struck). If the trial court's ruling is within the zone of reasonable disagreement, there is no abuse of discretion, and we uphold the trial court's ruling. *De La Paz*, 279 S.W.3d at 343–44; *Hernandez*, 351 S.W.3d at 160. We will not reverse the trial court if its decision to admit evidence is supported by the record since, under that scenario, there is no abuse of discretion. *Marsh v. State*, 343 S.W.3d 475, 478 (Tex. App.—Texarkana 2011, pet. ref'd). We give deference to the trial court's decision and may not substitute our decision for that of the trial court. *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003); *Marsh*, 343 S.W.3d at 478. Furthermore, the trial court's evidentiary ruling will not be disturbed if it is correct on any theory of law applicable to that ruling. *De La Paz*, 279 S.W.3d at 344; *Hernandez*, 351 S.W.3d at 160–61; *Duren*, 87 S.W.3d at 728.

### D. Applicability of the 2013 Amendment

At the trial of a defendant accused of, *inter alia*, aggravated sexual assault of a child, evidence of certain extraneous offenses committed by the defendant, including aggravated sexual assault of and indecency with a child, is admissible under Section 2 of Article 38.37 "for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant." TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(a)(1)(C), (E), (2)(b) (West Supp. 2014).[9] Under Article 38.37, evidence of extraneous offenses against other children is admissible even if such evidence would be otherwise

---

[9]The Acts described by Sam would constitute evidence of indecency with a child. *See* TEX. PENAL CODE ANN. § 21.11(a)(2)(B) (West 2011). One act described by Kathy would constitute evidence of aggravated sexual assault of a child. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i), (2)(B) (West Supp. 2014).

8

inadmissible under Rules 404 or 405 of the Texas Rules of Evidence.[10] *See* TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(b); *Bradshaw v. State*, No. 06-14-00165-CR, 2015 WL 2091376, at *4 (Tex. App.—Texarkana May 5, 2015, pet. filed). However, the admission of evidence under Article 38.37 "is limited by Rule 403's balancing test, which permits admission of evidence as long as its probative value is not substantially outweighed by its potential for unfair prejudice." *Bradshaw*, 2015 WL 2091376, at *5; TEX. R. EVID. 403, 60 TEX. B.J. 1129, 1134 (1997).

As the State points out, evidence of extraneous offenses involving non-complaining child victims first became admissible under Article 38.37 through the 2013 amendment to that Article.[11] Fahrni challenges the applicability of the 2013 amendment, arguing that under the enacting provision of the 2011 amendment to Article 38.37, the applicable law was the law in effect at the time of the alleged commission of his offense. We agree with Fahrni that in 2008, when he was alleged to have committed the offense, Article 38.37 only allowed evidence of extraneous acts involving the defendant and the child victim. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37, § 1. However, we do not agree that the enacting provision of the 2011 amendment to Article 38.37 is applicable to the question of whether evidence of an extraneous offense involving a non-complaining child victim is admissible in this case. As the State points out, the 2011 amendment

---

[10]*See* TEX. R. EVID. 404, 405, 60 TEX. B.J. 1129, 1134 (1997). Rule 404 generally prohibits the use of character evidence to prove a person acted in accordance with a character trait. TEX. R. EVID. 404, 60 TEX. B.J. 1129, 1134 (1997). Rule 405 details specific methods of proving character when character evidence is admissible. TEX. R. EVID. 405, 60 TEX. B.J. 1129, 1134 (1997).

[11]*See* Act of May 17, 2013, 83d Leg., R.S., ch. 387, § 1, 2013 Tex. Gen. Laws 1167 (current version at TEX. CODE CRIM. PROC. ANN. art. 38.37, § 1 (West Supp. 2014)).

only made revisions to Section 1 of Article 38.37.[12] Section 1 only applies to the admissibility of evidence of extraneous offenses against the complaining child victim. TEX. CODE CRIM. PROC. ANN. art. 38.37, § 1(a), (b). As discussed above, the 2011 revisions to Section 1 expanded its applicability to include proceedings in which a defendant is being prosecuted for the offense of sexual performance by a child, trafficking in children, or compelling prostitution of a child, none of which is involved in this case.[13] By its own terms, the enacting paragraph of the 2011 amendment only applies to "[t]he change in law made by [the 2011] Act."[14] In this point of error, Fahrni complains of the admission of evidence of extraneous offenses against a non-complaining child victim. Since the 2011 amendment did not change the law regarding the admissibility of evidence of extraneous offenses against a non-complaining child victim, its enacting paragraph is inapplicable to this issue. Rather, the enacting provision of the 2013 amendment, which for the first time made evidence of extraneous offenses against a non-complaining child victim admissible under Article 38.37, applies to this issue.[15] Therefore, we must look to the pertinent provisions of

---

[12]See Act of April 7, 2011, 82d Leg., R.S., ch. 1, § 2.08, 2011 Tex. Gen. Laws 1 (amended 2013).

[13]See id.

[14]See Act of April 7, 2011, 82d Leg., R.S., ch. 1, § 7.01, 2011 Tex. Gen. Laws 1 (amended 2013).

[15]The State contends that Fahrni has conceded on appeal that if the 2013 amendment applies, then the extraneous-offense evidence was admissible. We agree. However, this is not the same as conceding that the 2013 amendment is applicable in his case. As Fahrni points out, he argued at trial that since he was indicted in 2010, his criminal proceeding had commenced before the effective date of the 2013 amendment and, under the enacting provision of the 2013 amendment, the applicable law was the law in effect at that time. At most, Fahrni's brief may be read as conceding that if *Howland v. State*, 990 S.W.2d 274 (Tex. Crim. App. 1999), is controlling in construing the 2013 amendment, then the trial court did not err. However, we do not think that Fahrni has conceded that *Howland* is controlling or that the 2013 amendment is applicable to his case. The State, as the proponent of the evidence, has the burden to demonstrate its admissibility under Article 38.37. This burden includes showing that the amendment allowing evidence of an extraneous offense against a non-complaining child victim is applicable to this case.

10

the 2013 amendment and their enacting paragraph to determine whether they are applicable in this case.

> "When the Legislature amends a statute, we presume the Legislature meant to change the law, and we give effect to the intended change." *Brown v. State*, 915 S.W.2d 533, 536 (Tex. App.—Dallas 1995), *aff'd*, 943 S.W.2d 35 (Tex. Crim. App. 1997). Likewise, we must presume the Legislature employed each word for a particular purpose and similarly omitted each word for a particular purpose. *Id.*; *see State v. N.R.J.*, 453 S.W.3d 76, 77 (Tex. App.—Fort Worth 2014, pet. filed) ("We presume that the legislature chooses a statute's language with care, deciding to include or omit words for a purpose."); *Mireles v. State*, 444 S.W.3d 679, 684 (Tex. App.—Houston [14th Dist.] 2014, pet. filed) (same).

*Bradshaw*, 2015 WL 2091376, at *4. With these principles in mind, "[w]e begin our analysis, as in every case of statutory construction, by looking at the plain and literal language of the provision." *Howland*, 990 S.W.2d at 276; *see also Ex parte Evans*, 964 S.W.2d 643, 646 (Tex. Crim. App. 1998).

The 2013 amendment to Article 38.37 redesignated the former Section 2 as Section 1(b) and added the current Sections 2 and 2-a.[16] The current Section 2 states that it "applies only to the *trial* of a defendant." TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2 (emphasis added). The enactment provision of the 2013 amendment states,

> The change in law made by this Act applies to the admissibility of evidence in *a criminal proceeding* that commences on or after the effective date of this Act[—September 1, 2013]. The admissibility of evidence in *a criminal proceeding* that commences before the effective date of this Act is covered by the law in effect when the proceeding commenced, and the former law is continued in effect for that purpose.[17]

---

[16] *See* Act of May 17, 2013, 83d Leg., R.S., ch. 387, § 1, 2013 Tex. Gen. Laws 1167 (current version at TEX. CODE CRIM. PROC. ANN. art. 38.37, §§ 1(b), 2, 2-a (West Supp. 2014)).

[17] *See* Act of May 17, 2013, 83d Leg., R.S., ch. 387, §§ 2–3, 2013 Tex. Gen. Laws 1167 (emphasis added).

11

Initially, we note that the State argued at trial, and the trial court agreed, that under *Howland*, a proceeding, for purposes of Article 38.37, means any of the individual steps that may be taken during the course of a criminal prosecution. *See Howland*, 990 S.W.2d at 277. Since Fahrni's trial—one of the many steps of a criminal prosecution—commenced after September 1, 2013, the trial court held that the 2013 amendment to Article 38.37 was applicable. While we agree that the reasoning in *Howland* is instructive in the construction of the 2013 amendment, we do not think that it is controlling. *But see Dominguez v. State*, No. 04-13-00789-CR, 2015 WL 1939378, *3 (Tex. App.—San Antonio March 25, 2015, pet. filed) (finding 2013 amendment applicable to trial that commenced after September 1, 2013, based on *Howland*, but without additional analysis).

In *Howland*, the Texas Court of Criminal Appeals determined the applicability of Section 1 of Article 38.37 to the trial of a defendant who was indicted before the effective date of the statute, but who was tried after the effective date. *Howland*, 990 S.W.2d at 275. Section 1 provided that it "'applies to *a proceeding in a prosecution* of a defendant,'" and the enactment provision stated that it was applicable "'to *any criminal proceeding* that commences on or after the effective date.'" *Id.* at 276 (citing TEX. CODE CRIM. PROC. ANN. art. 38.37). The court focused its analysis on the meaning of "proceeding" and noted that *Black's Law Dictionary* recognizes two competing meanings: proceeding could "'describe the *entire course of an action at law*'" or "'*every step required to be taken* in any cause by either party.'" *Id.* at 276 (quoting BLACK'S LAW DICTIONARY 1024 (Centennial & 6th ed. 1990)). Since the entire course of an action at law "means the same

12

thing as or would encompass 'a prosecution,'" the court held that "the phrase 'a proceeding in a prosecution,' [in Section 1] refers on its face to one of the individual or smaller 'steps or measures' that may be taken *within* the larger criminal prosecution." *Id.* at 277. The court went on to hold that "[c]onstrued in light of this reading of section one, the enactment paragraph's reference to 'any criminal proceeding' logically refers to 'any' of the many steps that might occur within the process of a prosecution." *Id.* However, the court went on to specifically note,

> We recognize that the phrase "criminal proceeding" might, taken alone, be interpreted as an entire course of a prosecution. However, this phrase takes on a different meaning when construed in light of the language utilized in the article itself and in light of the use of the term "any" preceding it.

*Id.* at 277 n.6. Thus, the *Howland* court based its construction of "any criminal proceeding" in the enactment provision of Section 1 on the specific language used in Section 1 ("a proceeding in a prosecution"), its construction of the use of "proceeding" in Section 1, and the use of the modifier "any" preceding "criminal proceeding." *Id.* at 276–77.

However, the Legislature chose to limit the applicability of Section 2 to "the *trial* of a defendant," TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2 (emphasis added), and chose not to use the modifier "any" before the phrase "criminal proceeding" in the enactment provision.[18] Thus, we are tasked with construing the meaning of "criminal proceeding," taken alone, as used in the enactment paragraph.

Under the Texas Code of Criminal Procedure, words, phrases, or terms not "specially defined" "are to be taken and understood in their usual acceptation in common language." TEX.

---

[18]Act of May 17, 2013, 83d Leg., R.S., ch. 387, § 2, 2013 Tex. Gen. Laws 1167.

13

CODE CRIM. PROC. ANN. art. 3.01 (West 2015). "Criminal proceeding" is not specially defined in the Texas Code of Criminal Procedure. Therefore, we begin our analysis "by looking at the plain and literal language of the provision." *Howland*, 990 S.W.2d at 276. In the edition of *Black's Law Dictionary* in publication at the time the 2013 amendment was enacted, "criminal proceeding" is defined as "[a] proceeding instituted to determine a person's guilt or innocence or to set a convicted person's punishment; a criminal hearing or trial." BLACK'S LAW DICTIONARY 1324 (9th ed. 2009). This definition indicates that "criminal proceeding" to an individual hearing, a trial, or to either the guilt/innocence phase or punishment phase of the trial, rather than to the entire course of a criminal prosecution.

In addition, there is a distinction between a "criminal proceeding" and a "criminal action." The Texas Code of Criminal Procedure provides that "[a] criminal action is prosecuted in the name of the State of Texas against the accused, and is conducted by some person acting under the authority of the State, in accordance with its laws." TEX. CODE CRIM. PROC. ANN. art. 3.02 (West 2015). Thus, the Legislature uses "criminal action" in the sense of encompassing the entire course of an action at law against the accused, i.e., the entire course of a criminal prosecution. *See Howland*, 990 S.W.2d at 277 n.5 (recognizing one definition of "prosecution," as used in Section 1 of Article 38.37, is "criminal action," meaning "'the entire course of an action at law'"). This leads us to the conclusion that by using "criminal proceeding," rather than "criminal action," in the enactment provision, the Legislature must have intended "criminal proceeding" to mean something other than the entire course of action against the accused. Coupled with the common meaning of "criminal proceeding," found in *Black's*, and considering that Section 2 limits the use

14

of the evidence to the trial of the defendant, we find that the Legislature intended "criminal proceeding" in this instance to mean the trial, or one of the phases of the trial. Therefore, since the trial of this case commenced after September 1, 2013, evidence of an extraneous offense against a non-complaining child victim was admissible under Section 2 of Article 38.37. Consequently, we find that the trial court did not abuse its discretion in admitting the extraneous-offense testimony under Article 38.37, Section 2 and overrule Fahrni's first point of error.

### III.    Out-of-Court Statements of the Child Victim

Kathy Lach, a registered nurse and SANE, testified at trial regarding her examination of Sarah. She explained that a SANE conducts medical examinations of both adults and children. These medical examinations consist of taking a history, performing a head-to-toe physical assessment of the patient, and performing a genital examination. Lach testified that the purpose of the verbal history is for medical treatment and diagnosis, telling her where to look in her examination and what medical treatments might be needed. She also testified that she had performed a medical examination of Sarah, including obtaining a verbal history, performing a head-to-toe physical examination, and conducting a detailed genital examination. When memorializing a verbal history, Lach testified that she writes down whatever the patient tells her, word for word. She affirmed that her purpose in taking a child's verbal history is to evaluate the child's medical needs, and she further acknowledged that the children she examines have an interest in receiving proper medical treatment.

When the State offered Lach's SANE report into evidence, Fahrni objected that it contained hearsay; more specifically, he argued that it contained statements by Sarah that were not given for

15

purposes that would qualify them for admission under the medical exception to the hearsay rule. After his objection was overruled, the report was admitted into evidence and Lach read the history that Sarah provided.[19]

In his third point of error, Fahrni asserts that the trial court erred in allowing Lach to read the statement given her by Sarah, as set forth in the SANE report, under the medical diagnosis or treatment exception to the hearsay rule. *See* TEX. R. EVID. 803(4), 60 TEX. B.J. 1129, 1149 (1997). He argues that there is nothing in the record establishing that Sarah knew her statement was for purposes of medical diagnosis or that Sarah understood the importance of giving truthful information. Pointing to testimony provided by Lach, Fahrni also argues that the sole reason for the SANE examination was to allow Lach to obtain the oral statement for use in court. The State points out that when a victim is speaking with medical personnel, such as a SANE, this Court can infer from the record that the victim knew the importance of telling the truth in order to obtain medical treatment or diagnosis. The State further argues that there is sufficient evidence in the record to support an inference that Sarah understood the need to be truthful with the SANE, and we agree.

---

[19]As read by Lach, the SANE report reflected Sarah's history as follows:

"I was on my stomach on the floor and [Fahrni] was on the couch in the living room and we were watching TV. Then I felt him touch me. He touched me with his fingers on my private part." Patient labels anatomical picture of female vulva as what she calls her private part. "He touched me with his fingers beneath my panties. I moved and he said, I thought you were sleeping, then I got up and went in my room. When we are horse-playing he grabs me and -- and my brother and tries to pull our pants down but we hold on to our belt loops." Patient states, "He put his fingers inside my private that one time in the living room." Patient states.

## A.    Standard of Review

We review a trial court's admission of evidence under an exception to the hearsay rule using an abuse-of-discretion standard. *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008); *Franklin v. State*, 459 S.W.3d 670, 675 (Tex. App.—Texarkana 2015, pet. filed). We will not reverse the trial court's ruling unless it "was so clearly wrong as to lie outside the zone within which reasonable people might disagree." *Taylor*, 268 S.W.3d at 579 (citing *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003)); *Franklin*, 459 S.W.3d at 675.

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." TEX. R. EVID. 801(d), 60 TEX. B.J. 1129, 1149 (1997). "Once the opponent of hearsay evidence makes the proper objection, it becomes the burden of the proponent of the evidence to establish that an exception applies that would make the evidence admissible in spite of its hearsay character." *Taylor*, 268 S.W.3d at 578–79; *Franklin*, 459 S.W.3d at 676. In this case, Fahrni properly objected to the admission of Sarah's hearsay statement contained in the SANE report; therefore, it was incumbent on the State to establish an exception under which the evidence was admissible. At trial, the State asserted that the statement was admissible as a statement made for medical diagnosis or treatment, and the trial court admitted it on that basis. Rule 803(4) provides,

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> . . . .
>
> **(4)    Statements for Purposes of Medical Diagnosis or Treatment.** Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception

17

or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

TEX. R. EVID. 803(4), 60 TEX. B.J. 1129, 1149 (1997).

A proponent of a statement made for the purpose of medical diagnosis or treatment has the burden to show that the "declarant was aware that the statements were made for that purpose and that 'proper diagnosis or treatment depends upon the veracity of such statements.'" *Taylor*, 268 S.W.3d at 589 (quoting *Jones v. State*, 92 S.W.3d 619, 623 (Tex. App.—Austin 2002, no pet.)); *Prieto v. State*, 337 S.W.3d 918, 921 (Tex. App.—Amarillo 2011, pet. ref'd). In addition, the proponent must show that the particular statement is "pertinent to diagnosis or treatment."[20] *See* TEX. R. EVID. 803(4), 60 TEX. B.J. 1129, 1149 (1997); *see also Taylor*, 268 S.W.3d at 591; *Prieto*, 337 S.W.3d at 921.

We look to the entire record to determine whether a child understands the importance of being truthful when being questioned by medical personnel. *Franklin*, 459 S.W.3d at 676–77; *see Beheler v. State*, 3 S.W.3d 182, 188–89 (Tex. App.—Fort Worth 1999, pet. ref'd). An express statement that the child understood the need to be truthful is not required. *Beheler*, 3 S.W.3d at 188. Rather, as the Texas Court of Criminal Appeals has stated, "[I]t seems only natural to presume that adults, and even children of a sufficient age or apparent maturity, will have an implicit awareness that the [medical personnel]'s questions are designed to elicit accurate information and that veracity will serve their best interest."[21] *Taylor*, 268 S.W.3d at 589. In addition, it is

---

[20]In this appeal, Fahrni does not contend that the particular statements contained in the SANE report were not pertinent to diagnosis or treatment.

[21]*See Taylor*, 268 S.W.3d at 589 n.95 (citing cases recognizing children as young as eight years old to be of sufficient age to appreciate need to be truthful in statements made to medical personnel).

reasonable to assume that a child of sufficient age understands that statements made to a recognized medical professional, such as a physician or nurse, are "made for the purpose of medical diagnosis and treatment." *Gohring v. State*, 967 S.W.2d 459, 463 (Tex. App.—Beaumont 1998, no pet.). As this Court recently held, "[C]ourts can infer from the record that the victim knew it was important to tell a SANE the truth in order to obtain medical treatment or diagnosis." *Franklin*, 459 S.W.3d at 677 (citing *Prieto*, 337 S.W.3d at 921).

**B.    Analysis**

In this case, Lach testified that she introduced herself to Sarah, took a history of what had happened to her, and performed a head-to-toe physical examination and a detailed genital examination. She testified that the purpose of taking the history was to evaluate the medical needs of the child, and she confirmed that Sarah had an interest in receiving proper medical treatment. There is nothing in the record that would lead us to conclude that Sarah was unaware that the purpose of Lach's questions was to provide medical treatment or diagnosis or that she was unaware of the necessity to be truthful. *See Taylor*, 268 S.W.3d at 589. We find the record sufficient to support a finding that Sarah understood both the necessity to be truthful and that her statements were elicited for the purpose of medical treatment or diagnosis.

Further, we disagree with Fahrni's assertion that the history was taken solely for use in court. Fahrni points to the following testimony of Lach, along with her testimony that the examination was performed at the request of law enforcement, in support of his contention:

> Q      [By the State] And why is it so important, ma'am, that you write down word for word what the child tells you?

19

A     Because if it were to be going to court, I don't know if it would or how long it would be from then, and there may be no way I would remember, so that way I can remember exactly what the child told me and it wouldn't be, you know, any speculation on my part.

We do not think this statement is necessarily evidence that Lach took Sarah's history solely for its use in court. Lach testified that courts have recognized her as an expert in her capacity as a SANE, indicating that she has testified in similar cases. Therefore, the complained-of statement could reasonably be interpreted as reflecting her concern that any future testimony she may give concerning her examination be as accurate as possible. This does not negate the fact that the purpose behind taking the patient's history, including her complaints and an explanation of the cause of those complaints, was medical treatment and diagnosis. Further, Fahrni ignores the exchange that immediately followed the complained-of statement:

Q     And when you ask these questions of the child to get the verbal history, it [sic] that to evaluate the medical needs of the child at that time?

A     Correct.

Q     Now, when you're, when you take a verbal history from a child, do these children have an interest in receiving proper medical treatment?

A     Yes.

Lach then made it clear that she does not ask a patient what kind of assault she may have suffered; rather, she asks the patient why she is there. On this record, we conclude that it is at least within the zone of reasonable disagreement that the history was taken for the purpose of medical treatment or diagnosis. Therefore, we hold that the trial court did not abuse its discretion in admitting Lach's testimony, as well as the statements attributed to Sarah contained in the SANE report, under Rule 803(4). We overrule Fahrni's third point of error.

20

## IV.  Cross-Examination of the State's Expert Witness

The State offered Kandice Kimmel, who conducted forensic interviews of Sarah and Sam, as an expert witness. Kimmel testified that she found no signs of coaching in their interviews.[22] On cross-examination, Fahrni sought to use a statement made by Sarah in her forensic interview. The State initially raised a hearsay objection, and when that objection was overruled, the State objected under Rule 403.[23] During a hearing outside the presence of the jury, Fahrni informed the trial court that he wished to cross-examine Kimmel regarding a portion of the forensic interview Fahrni viewed as evidence of coaching. He identified the portion of the interview as follows:

> [Counsel for Fahrni]: Ms. Kimmell says, Okay, all right. Well, did you know you were coming here to talk to me today? And [Sarah]'s response is, Yeah, my, um, there was a paper on his sink that he molested his ex-wife or his ex-girlfriend's daughters but nobody -- but my mom didn't believe it because her ex-wife didn't pursue it.

Fahrni then argued that this was a sign of coaching because it was a non-responsive answer and because "pursue" was not a word that an eleven-year-old would normally use. The State responded by pointing out that Kimmel had not testified that the statement contained adult language. The State then argued that allowing Fahrni to cross-examine this expert witness about the victim's statement was substantially more prejudicial than allowing him to cross-examine the victim herself. Finally, the State claimed that this would be confusing to the jury. The trial court pointed

---

[22]Kimmel testified that "[s]ome signs would be inconsistencies during the child's statement, the child's not having answers for the questions, not having any sensory details, or using very adult language." On cross-examination, she testified that "the signs we look for for a child that is not coached would be if they're -- their statement remained consistent, if they used kid language, if they had adult sexual knowledge, if they correct me during the interview."

[23]Under Rule 403, relevant evidence may be excluded, *inter alia*, "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." TEX. R. EVID. 403, 60 TEX. B.J. 1129, 1134 (1997).

21

out that rather than giving an opinion on coaching, Kimmel had simply stated that she saw no signs of coaching. The court additionally noted that Fahrni was free to cross-examine Sarah about the statement[24] and was also at liberty to argue to the jury that this was evidence of coaching. The trial court then found that questioning Kimmel about the statement would create a confusion of the issues and sustained the State's objection.

In his fourth point of error, Fahrni contends that the trial court erred in limiting his cross-examination of Kimmel in violation of Rule 705 of the Texas Rules of Evidence[25] and his right to confront the witnesses against him.[26] He argues that the trial court's ruling prevented him from cross-examining the State's expert witness concerning the facts and data she relied upon in forming her opinion. The State responds that the alleged error is predicated on an exclusion of evidence and that Fahrni failed to preserve this error for appellate review, citing *Love v. State*, 861 S.W.2d 899, 903 (Tex. Crim. App. 1993). We agree.

Fahrni characterizes the trial court's ruling as an impediment to his right under Rule 705 to examine Kimmel concerning the facts and data she relied upon in forming any opinion she may have expressed. The trial court, however, informed Fahrni that in its view, Kimmel had not

---

[24]As noted above, Fahrni cross-examined Sarah regarding the complained-of statement.

[25]Rule 705 states that when an expert testifies in terms of opinion, she "may . . . be required to disclose on cross-examination, the underlying facts or data" on which the opinion is based. TEX. R. EVID. 705(a), 60 TEX. B.J. 1129, 1147 (1997).

[26]Although Fahrni's point of error states that the trial court's ruling "violat[ed] . . . Appellant's right to confront witnesses against him," he makes no argument and cites no legal authority in support of this point. The parties to an appeal are required to "cite specific legal authority and to provide legal argument based on that authority." *Rhoades v. State* 934 S.W.2d 113, 118 (Tex. Crim. App. 1996) (citing *Vuong v. State*, 830 S.W.2d 929, 940 (Tex. Crim. App. 1992)). Where adequate briefing is not provided, the contention may be overruled. *Id.*; *Heiselbetz v. State*, 906 S.W.2d 500, 512 (Tex. Crim. App. 1995). We overrule this point.

expressed an expert opinion about coaching, but merely had stated that she saw no signs of coaching. If the trial court is correct, then any error on its part could be characterized as limiting Fahrni's right to impeach Kimmel under Rule 611(b).[27] In either case, the predicate of the alleged error is the exclusion of evidence by the trial court, and it was necessary for Fahrni to make an adequate offer of proof in order to preserve any error. *See* TEX. R. EVID. 103(a)(2), 60 TEX. B.J. 1129, 1130 (1997); *Mays v. State*, 285 S.W.3d 884, 889–90 (Tex. Crim. App. 2009); *Love*, 861 S.W.2d at 903; *Duke v. State*, 365 S.W.3d 722, 725–26 (Tex. App.—Texarkana 2012, pet. ref'd).

Under Rule 103(a)(2),

> Error may not be predicated upon a ruling which . . . excludes evidence unless a substantial right of the party is affected, and
>
> . . . .
>
> (2)    . . . . the substance of the evidence was made known to the court by offer, or was apparent from the context within which questions were asked.

TEX. R. EVID. 103(a)(2), 60 TEX. B.J. 1129, 1130 (1997). The complaining party may make his offer of proof through questions and answers, or by counsel making a concise statement of the evidence. *Mays*, 285 S.W.3d at 889. "If an offer of proof is made in the form of a concise statement, the concise statement must include a reasonably specific summary of the proposed testimony." *Duke*, 365 S.W.3d at 726 (citing *Love*, 861 S.W.2d at 901; *Harty v. State*, 229 S.W.3d 849, 854 (Tex. App.—Texarkana 2007, pet. ref'd)). The purpose of the offer of proof is "'to enable an appellate court to determine whether the exclusion was erroneous and harmful'" and,

---

[27]Rule 611(b) allows cross-examination of a witness "on any matter relevant to any issue in the case, including credibility." TEX. R. EVID. 611(b), 60 TEX. B.J. 1129, 1145 (1997).

secondarily, "'to permit the trial judge to reconsider his ruling in light of the actual evidence.'" *Mays*, 285 S.W.3d at 890 (quoting Steven Goode et. al., 1 *Texas Practice Series—Guide to the Texas Rules of Evidence: Civil and Criminal* § 103.3 (2d ed. 1993)).

In this case, Fahrni failed to either present a formal bill of exceptions to the trial court or make an informal offer of proof through questions and answers or in the form of a concise statement by counsel. Fahrni informed the trial court of the specific statement made by Sarah in her interview and argued that the statement was non-responsive to Kimmel's question and that Sarah used adult language. However, we do not know how the statement related to Kimmel's alleged opinion on coaching, if at all, or what Kimmel's testimony would have been regarding the statement. We cannot speculate on what Kimmel's testimony might have been, then find error based on that speculation. *See Duke*, 365 S.W.3d at 726. Since no error has been preserved regarding the cross-examination of Kimmel, we overrule Fahrni's fourth point of error.

## V.    Jury Argument

In closing argument, the State argued to the jury that the evidence showed Fahrni's sexual attraction for children and that Sarah's trial testimony regarding the sexual assault was consistent with the statements she had made to Kimmel. The State then reminded the jury members of expert testimony they had heard regarding grooming and how Sarah's, Sam's, and Kathy's testimony supported the State's theory that Fahrni had targeted their families and groomed them for his sexual assaults. The State next argued that the circumstances leading up to the assault on Sarah were strikingly similar to those that preceded the assault on Kathy. Then, the State shifted its focus to Fahrni's defensive theories and stated,

24

> Now, ladies and gentlemen, in order for you to find Kevin Fahrni not guilty, you would have to believe the defense's theory, and the defense's theory is that in 2005 after [Kathy]'s mother had been broken up with Kevin Fahrni for a number of years, after they had left the state and moved back home to Pennsylvania and they had no contact with him, that her mother was so terribly upset and distraught over the breakup that had occurred years before --

At that point, Fahrni objected that the State was attempting to change its burden of proof. The trial court disagreed and overruled the objection.

In his fifth point of error, Fahrni asserts that the State's argument improperly lessened its burden of proof and that the trial court erred in overruling his objection. The State argues that it was permissibly summarizing the evidence, making reasonable deductions from the evidence, and answering a defensive theory. In addition, the State argues that if there was any error, it was harmless. We conclude that the trial court did not err and overrule this point of error.

A trial court's ruling on an objection to a jury argument is reviewed using an abuse-of-discretion standard. *Lemon v. State*, 298 S.W.3d 705, 707 (Tex. App.—San Antonio 2009, pet. ref'd); *see also Garcia v. State*, 126 S.W.3d 921, 924 (Tex. Crim. App. 2004). Further, we review challenged remarks from jury arguments in the context in which they appear. *Gaddis v. State*, 753 S.W.2d 396, 398 (Tex. Crim. App. 1988); *Tucker v. State*, 456 S.W.3d 194, 217 (Tex. App.—San Antonio 2014, pet. ref'd). Proper jury argument falls within four areas: evidence summation, reasonable deductions drawn from the evidence, answers to the arguments of opposing counsel, or pleas for law enforcement. *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008); *Jackson v. State*, 17 S.W.3d 664, 673 (Tex. Crim. App. 2000). Counsel generally has wide latitude in drawing inferences from the evidence so long as the inferences are reasonable, fair, and made in good faith. *Gaddis*, 753 S.W.2d at 398.

25

In his opening argument, Fahrni urged the jury to pay attention to the timing of the allegations against him relating to Sarah and to note how they were made to look like the prior allegations relating to Kathy. He argued that the allegations were false and that they were motivated by revenge from a scorned mother. Fahrni's argument regarding the allegations resulting from a scorned mother reasonably could be interpreted as referring to both the prior (Kathy's) allegations and the present (Sarah's) allegations. Thus, it is at least within the zone of reasonable disagreement that the State was answering Fahrni's argument. *See Tucker*, 456 S.W.3d at 217–18. Further, our review of the entirety of the State's argument shows that the State was arguing the implausibility of Fahrni's defensive theories based on the evidence and reasonable deductions from that evidence. As noted above, these remarks appeared immediately after the State had argued to the jury that the evidence showed Fahrni's motive, opportunity, and plan to commit the sexual assault and Sarah's veracity in claiming that he had assaulted her. The State went on to argue that other evidence established that the families did not know each other, that Sandra and Sarah did not know the details of Kathy's allegations, and that Sandra was already moving out and, hence, had no revenge motive. We also note that the State went on to emphasize that it had the burden to prove the allegations in the indictment beyond a reasonable doubt. We hold that the trial court did not abuse its discretion in overruling Fahrni's objection and overrule Fahrni's fifth point of error.

## VI. The Indictment

In his second point of error, Fahrni asserts that the trial court erred by including in the jury charge the statement that Fahrni was accused of committing the offense on or about the 1st day of

26

July, 2008, when the date alleged in the original indictment was on or about November 1, 2008. Although Fahrni acknowledges that the State moved to amend the alleged date of the offense at a pretrial hearing over two years before trial and that the trial court granted that request, he nevertheless complains that the State filed neither a motion to amend, nor an amended indictment. Fahrni then contends that as a result, the evidence was insufficient to support his conviction. Fahrni's argument is based solely on the lack of a proper amendment to the indictment, and he does not contend that there was insufficient evidence to convict him if the indictment had been properly amended. The State argues that since Fahrni stated he had no objections to the amendment at the pretrial hearing, since the trial court approved the amendment, and since the trial court noted the date of amendment on a copy of the original indictment, the indictment was properly amended. We agree.

After Fahrni filed his brief, the court reporter filed a supplemental reporter's record containing the transcript of a pretrial hearing held on April 23, 2012, and the district clerk filed a supplemental clerk's record containing the amended indictment. The amended indictment appears to be a copy of the original indictment with a line drawn through the word "November" and the word "July" handwritten above it. In the margin to the right of these changes are the handwritten initials of the trial judge and the date "4/23/2012." Although we cannot discern a separate clerk's file mark for this document, the district clerk has certified it as part of the record in this case. Fahrni has not challenged this filing and, therefore, has not overcome the presumption of the regularity of the clerk's record. *See Chancy v. State*, 614 S.W.2d 446, 447 (Tex. Crim. App. [Panel Op.] 1981). An interlineated copy of the original indictment showing the amendments approved

27

by the trial court is an effective amendment. *Riney v.* State, 28 S.W.3d 561, 565–66 (Tex. Crim. App. 2000). Therefore, we find that the amendment to the indictment reflecting an offense date of on or about July 1, 2008, was effective. We overrule Fahrni's second point of error.

We affirm the judgment of the trial court.


Jack Carter
Justice

Date Submitted:    July 9, 2015
Date Decided:    August 31, 2015

Publish



# Court of Appeals
## Sixth Appellate District of Texas

# J U D G M E N T

Kevin Fahrni, Appellant

No. 06-14-00148-CR    v.

The State of Texas, Appellee

Appeal from the 5th District Court of Bowie County, Texas (Tr. Ct. No. 10F0484-005). Opinion delivered by Justice Carter* and Chief Justice Morriss and Justice Moseley participating. *Justice Carter, Sitting by Assignment.

As stated in the Court's opinion of this date, we find no error in the judgment of the court below. We affirm the judgment of the trial court.

We note that the appellant, Kevin Fahrni, has adequately indicated his inability to pay costs of appeal. Therefore, we waive payment of costs.

RENDERED AUGUST 31, 2015
BY ORDER OF THE COURT
JOSH R. MORRISS, III
CHIEF JUSTICE

ATTEST:
Debra K. Autrey, Clerk