

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-21-00067-CR

JOHN CHARLES DENELSBECK, III, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 8th District Court
Delta County, Texas
Trial Court No. 7735

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Chief Justice Morriss

## MEMORANDUM OPINION

A Delta County jury found John Charles Denelsbeck, III, guilty of indecency with a child by sexual contact. After a punishment hearing, the jury found the State's punishment enhancement allegation true and assessed a sentence of forty-five years' imprisonment. On appeal, Denelsbeck argues that the evidence is legally insufficient to support the jury's finding of guilt and that the trial court erred by admitting other extraneous offenses, including a prior juvenile adjudication involving indecency with a child, pursuant to Article 38.37 of the Texas Code of Criminal Procedure.

We conclude that (1) legally sufficient evidence supports the jury's finding of guilt and that (2) the trial court did not err in its evidentiary rulings. Even so, we modify the judgment to reflect the correct name of the defendant. As modified, the trial court's judgment is affirmed.

*(1)*      *Legally Sufficient Evidence Supports the Jury's Finding of Guilt*

Denelsbeck asserts that the evidence does not support his conviction. We disagree.

"In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt." *Williamson v. State*, 589 S.W.3d 292, 297 (Tex. App.—Texarkana 2019, pet. ref'd) (citing *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd)). "We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury 'to fairly resolve conflicts in testimony, to weigh the evidence, and to

2

draw reasonable inferences from basic facts to ultimate facts.'" *Id.* (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007))).

"Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge." *Id.* (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "The 'hypothetically correct' jury charge is 'one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id.* (quoting *Malik*, 953 S.W.2d at 240). Here, the State alleged that Denelsbeck, with intent to arouse or gratify his sexual desire, "intentionally or knowingly engaged in sexual contact by touching the genitals of [Angie],[1] a child younger than 17."

The child victim, Angie, who was sixteen at the time of trial, testified that Denelsbeck's inappropriate touching occurred at her ninth birthday party. After enjoying the inflatable waterslide at her water-themed party, Angie went to her bedroom to change into dry clothes. Angie testified that Denelsbeck walked into her room as she was removing her bathing suit, sat in front of her on her bed, touched her vagina, and "said something about [her] peach fuzz down there." Angie said that she was confused when Denelsbeck touched her vagina with his hands but did not tell anyone about the incident because she "didn't think it was anything." According to Angie, she and Denelsbeck were alone in the room when the touching occurred.

---

[1]We will use pseudonyms for the child victim, her family, and any witnesses who were minors at the time an offense was committed to protect their identity. *See* TEX. R. APP. P. 9.10(a)(3).

Angie also testified about another incident with Denelsbeck when she was thirteen. Angie said that Denelsbeck woke her up at night and "pointed down to his outline on his boxers." According to Angie, she told Denelsbeck that she did not want to look at his penis, but he "wouldn't let [her] go back to sleep until [she] did." As a result, Angie looked at Denelsbeck's penis and went back to sleep once he exited her room. Angie testified that she did not tell anyone about the incident because she was scared.

Angie explained the circumstances surrounding her outcry. She said that her mother, who had "mental problems," ran into an abuser at a funeral in 2020 and tried to "stay clear" of him. Angie witnessed her mother's reaction and testified that she made her outcry then because she thought that "if [she] didn't say anything, [she] would end up just as bad off mental[ly] as [her mother] was." As a result, Angie told her mother, father, and brothers during the car ride home from the funeral about Denelsbeck's acts.

Selene Heredia, a forensic interviewer with the Northeast Texas Child Advocacy Center (CAC), testified that she interviewed Angie, who said that Denelsbeck "touched places that he shouldn't have been touching." According to Heredia, Angie said that Denelsbeck came into her room while she was removing her bathing suit during her birthday party, "touched her fuzz on her vagina with his hand," and made "jokes about her having hair down there." Heredia also testified that, a little after Angie's thirteenth birthday, Denelsbeck told Angie to look at him and Angie said "that she turned around and . . . saw his dick poking out of his boxers."

As a part of its case-in-chief, the State introduced evidence of extraneous offenses involving other children. Another victim, Amanda, testified that Denelsbeck "tried to put a

4

pencil in [her] vagina" when she was nine or ten years old. Yet another victim, Sally, testified that she was visiting with others at a relative's house when she was sixteen years old, that she walked into a bedroom where Denelsbeck was present, and that Denelsbeck wrestled her and pulled up her shirt. According to Sally, Denelsbeck told her that she had "nice boobs" and asked her if she wanted to see his privates. Sally said that she felt "awful," pulled down her shirt, and told Denelsbeck, "No." The State also introduced Denelsbeck's juvenile adjudication for indecency with a child. According to the State's petition alleging delinquent conduct, Denelsbeck had allegedly engaged in sexual contact with Amanda and Amanda's brother and had touched the breast of another child, Holly.

Denelsbeck's opening statement at trial admitted that he was at Angie's ninth birthday party, denied the touching, and argued that he had no opportunity to commit the offense because he and another partygoer, Bill Robertson, were monitoring the inflatable waterslide during the windy day. In support of those claims, Denelsbeck called his wife, Alicia, who testified that she had attended Angie's ninth birthday party and that the touching could not have occurred.

Alicia explained that she had taken Angie, along with the other girls attending the party, to get changed into dry clothes after they had used the waterslide. She testified that Denelsbeck could not have committed the crime because he remained outside with Robertson until after Angie had changed into dry clothes and dinner was ready. Alicia said that she and Denelsbeck left for their house right after eating dinner. Because she was with him after he came into the house, Alicia testified that Denelsbeck had no opportunity to be alone with Angie. During cross-examination, Alicia agreed that Denelsbeck had gone into the house a few times during Angie's

5

birthday party to use the restroom and that Angie was sometimes capable of dressing herself at that age. Even so, she said she was "in and out of the room" while Angie changed.

On Denelsbeck's behalf, Alicia denied the allegation that he showed his privates to Angie when she was thirteen. Alicia also said that Sally's alleged abuse could not have occurred because Denelsbeck was never left alone with her. During cross-examination, she admitted that Denelsbeck told her he was accused of touching "two girls and a boy" that were around the same age as he was when he was a minor. Even so, Alicia believed that all the allegations against Denelsbeck by the various victims were false.

Robertson, Denelsbeck's close friend, testified that he attended Angie's ninth birthday party and that he and Denelsbeck manned the waterslide. Robertson remembered that, as the mosquitoes were coming out, Alicia started calling the children inside and announced that she was going to get them dressed. Robertson said that, after everyone else went inside, he and Denelsbeck deflated the waterslide. After the waterslide was packed, Robertson said that he and Denelsbeck went inside the house after the children were already eating in dry clothes, ate dinner themselves, and left with Alicia.

Denelsbeck argues that, because of Alicia's and Robertson's testimony, the evidence was legally insufficient to support the jury's finding of guilt. But the record contains more evidence than just the testimony from those two individuals. Angie's testimony was evidence that Denelsbeck touched her vagina underneath her clothing. "The testimony of a child victim alone is sufficient to support a conviction for . . . indecency with a child." *Scott v. State*, 202 S.W.3d 405, 408 (Tex. App.—Texarkana 2006, pet. ref'd) (citing TEX. CODE CRIM. PROC. ANN. art.

6

38.07 (Supp.)). Moreover, the jury was free to disbelieve Alicia's and Robertson's testimony, and Heredia's testimony showed that the details of Angie's allegations were consistent. Also, as further explained below, the jury was free to believe that Denelsbeck committed extraneous indecent acts with other children and that he acted in conformity with his character by committing indecency with Angie.

Because we find the evidence legally sufficient to support the jury's finding of guilt, we overrule this point of error.

*(2)* *The Trial Court Did Not Err in Its Evidentiary Rulings*

Denelsbeck also argues that the trial court erred in admitting, over his Rule 403 objection, evidence of extraneous offenses committed by him against other children, including a prior juvenile adjudication. Because we find no error in the trial court's decision to admit the extraneous-offense evidence, we overrule Denelsbeck's remaining points of error.

"We review a trial court's decision to admit or exclude evidence for an abuse of discretion." *Flowers v. State*, 438 S.W.3d 96, 103 (Tex. App.—Texarkana 2014, pet. ref'd) (citing *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010)). "Abuse of discretion occurs only if the decision is 'so clearly wrong as to lie outside the zone within which reasonable people might disagree.'" *Id.* (quoting *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008) (citing *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g))). "We may not substitute our own decision for that of the trial court." *Id.* (citing *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003)). "We will uphold an evidentiary ruling if

7

it was correct on any theory of law applicable to the case." *Id.* (citing *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009)).

We have previously explained,

> By statute, when a defendant is tried for a sexual offense committed against a child under seventeen years of age, the State may, notwithstanding Rules 404 and 405 of the Texas Rules of Evidence, introduce evidence that the defendant has committed a separate sexual offense against another child "for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant."

*Price v. State*, 594 S.W.3d 674, 679 (Tex. App.—Texarkana 2019, no pet.) (quoting TEX. CODE CRIM. PROC. ANN. art. 38.37, §§ 1–2 (Supp.)). As a result, in a case like this one, Article 38.37 "permits the introduction of evidence 'in a trial of a defendant for the enumerated sexual crimes against children . . . that the defendant has committed certain offenses against a nonvictim of the charged offense.'" *Id.* (quoting *Harty v. State*, 552 S.W.3d 928, 933 (Tex. App.—Texarkana 2018, no pet.) (quoting *Belcher v. State*, 474 S.W.3d 840, 844 (Tex. App.—Tyler 2015, no pet.))).

Before evidence under Article 38.37 is introduced, the trial judge must conduct a hearing outside of the jury's presence to "determine that the evidence likely to be admitted at trial will be adequate to support a finding by the jury that the defendant committed the separate offense beyond a reasonable doubt." TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2-a (Supp.). At the Article 38.37 hearing, Denelsbeck argued that his juvenile adjudication should be excluded and lodged a Rule 403 objection to the extraneous-offense evidence.

For the acts against Amanda, her brother, and Holly, Denelsbeck, who was thirty-seven at trial, was adjudicated by a juvenile court as having engaged in delinquent conduct, specifically

8

indecency with a child by contact. Denelsbeck argues that the trial court erred by admitting his juvenile adjudication. Yet, nothing in Article 38.37 bars the introduction of a juvenile conviction. "If the legislature had intended Article 38.37 to apply only to those extraneous offenses committed by the defendant [after reaching] the age of majority, it would have said so." *Perez v. State*, No. 02-19-00163-CR, 2020 WL 6788196, at \*5 (Tex. App.—Fort Worth Nov. 19, 2020, pet. ref'd) (mem. op., not designated for publication) (citing *Miles v. State*, 506 S.W.3d 485, 487 (Tex. Crim. App. 2016)).[2] As a result, we cannot conclude that the trial court abused its discretion by determining that the juvenile extraneous-offense evidence was admissible under Article 38.37.

Next, "the admission of evidence under Article 38.37 'is limited by Rule 403's balancing test, which permits admission of evidence as long as its probative value is not substantially outweighed by its potential for unfair prejudice.'" *Price*, 592 S.W.3d at 680 (quoting *Fahrni v. State*, 473 S.W.3d 486, 492 (Tex. App.—Texarkana 2015, pet. ref'd) (quoting *Bradshaw v. State*, 466 S.W.3d 875, 882 (Tex. App.—Texarkana 2015, pet. ref'd))). Even so, Rule 403 "should be used sparingly to exclude relevant, otherwise admissible evidence that might bear on the credibility of either the defendant or complainant in such 'he said, she said' cases." *Bradshaw v. State*, 466 S.W.3d 875, 883–84 (Tex. App.—Texarkana 2015, pet. ref'd) (quoting *Hammer v. State*, 296 S.W.3d 555, 562 (Tex. Crim. App. 2009)). Because evidence of separate sexual offenses is "probative on the issues of intent and a defendant's character or propensity to commit

---

[2]"Although unpublished cases have no precedential value, we may take guidance from them 'as an aid in developing reasoning that may be employed.'" *Rhymes v. State*, 536 S.W.3d 85, 99 n.9 (Tex. App.—Texarkana 2017, pet. ref'd) (quoting *Carrillo v. State*, 98 S.W.3d 789, 794 (Tex. App.—Amarillo 2003, pet. ref'd)).

sexual assaults on children," *Price*, 594 S.W.3d at 680 (citing *Bradshaw*, 466 S.W.3d at 884), existing authority has found that the probative value of sexual offenses committed against nonvictims is not substantially outweighed by the "danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence," TEX. R. EVID. 403.

Denelsbeck argues that his juvenile adjudication was too remote to be considered probative. "Remoteness can lessen significantly the probative value of extraneous-offense evidence." *West v. State*, 554 S.W.3d 234, 239 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (citing *Gaytan v. State*, 331 S.W.3d 218, 226 (Tex. App.—Austin 2011, pet. ref'd)). "Still, remoteness alone does not require the trial court to exclude evidence of an extraneous offense under Rule 403." *Id.* (citing *Gaytan*, 331 S.W.3d at 226); *Price*, 594 S.W.3d at 680 n.6. "Rather, remoteness is but one aspect of an offense's probativeness the trial court is to consider along with the other factors in the Rule 403 analysis." *West*, 554 S.W.3d at 239–40.

When a trial court conducts a Rule 403 balancing test,

> it must balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006). In any given case, "these factors may well blend together." *Id.* at 642.

10

With respect to the first factor in the balancing test, evidence of a separate sexual offense against a child admitted under Article 38.37 is probative of a defendant's character or propensity to commit sexual assaults on children. *See Bradshaw*, 466 S.W.3d at 883. Denelsbeck was on trial for indecency with Angie, who was nine at the time of the offense. The State's extraneous offense evidence included evidence that Denelsbeck had committed another offense against Angie and indecent acts with several other children. In addition to the offense alleged in the State's indictment, Angie alleged that Denelsbeck made her look at his penis when she was thirteen. Sally said that Denelsbeck, while an adult, asked her if she wanted to look at his penis when she was sixteen.

The State also introduced Denelsbeck's juvenile adjudication. While its remoteness could have "significantly lessen[ed]" the probative force of the evidence, the adjudication was for Denelsbeck's acts of indecency with children. *Price*, 594 S.W.3d at 680 n.6; *Gaytan*, 331 S.W.3d at 227. Because the juvenile adjudication involved the same offense for which Denelsbeck was on trial and included an act of indecency against Amanda, who was also nine or ten at the time of the offense, "the trial court could have reasonably found that [the] inherent probative force [of the extraneous offenses] was significantly bolstered." *Gayton*, 331 S.W.3d at 227; *see Killinger v. State*, No. 13-17-00016-CR, 2020 WL 728305, at *7 (Tex. App.—Corpus Christi Feb. 13, 2020, pet. ref'd). As a result, we do not believe that the "remoteness of the extraneous offenses rendered the probative value of this evidence so weak as to render this evidence inadmissible under Rule 403." *Price*, 594 S.W.3d at 680 n.6 (quoting *Harty v. State*, 552 S.W.3d 928, 935 (Tex. App.—Texarkana 2018, no pet.)). Instead, we find that the

extraneous-offense evidence offered by the State was probative of Denelsbeck's character or propensity to commit indecent acts with children around Angie's age. As a result, we conclude that this factor weighed strongly in favor of admission.

As to the second factor, we find that the State demonstrated its great need for the evidence. By adopting Article 38.37, Section 2, the Legislature recognized that in child sex offenses, "there is typically very little evidence to assist prosecutors with proving their cases." *Bradshaw*, 466 S.W.3d at 884 (quoting Senate Comm. on Criminal Justice, Bill Analysis, Tex. S.B. 12, 83d Leg., R.S. (2013)). At trial, Denelsbeck highlighted the delay between the offense and Angie's outcry, argued that there was no physical evidence in support of or witness to the offense, and introduced Alicia's and Robertson's testimony in support of his argument that he had no opportunity to touch Angie inappropriately during her ninth birthday party. "Rule 403 'should be used sparingly to exclude relevant, otherwise admissible evidence that might bear on the credibility of either the defendant or complainant in such 'he said, she said' cases [involving sexual assault].'" *Id.* at 883–84 (quoting *Hammer v. State*, 296 S.W.3d 555, 562 (Tex. Crim. App. 2009)). Accordingly, we find that the second factor also weighed in favor of admission.

With respect to the third factor, we recognize that the inherently inflammatory and prejudicial nature of evidence of extraneous sexual offenses against children does tend to suggest a verdict on an improper basis. *Newton v. State*, 301 S.W.3d 315, 320 (Tex. App.—Waco 2009, pet. ref'd). Thus, the third factor weighed against admission.

As to the fourth factor, the ultimate issue in this case was whether Denelsbeck had committed the act of indecency with Angie as alleged in the State's indictment. The trial court

12

mitigated the tendency of the extraneous-offense evidence to confuse or distract the jury from the main issue at trial by instructing them that such extraneous-offense evidence could only be considered if the jury determined, beyond a reasonable doubt, that the extraneous offenses were committed and for the purposes of determining whether "the state proved all the elements for the charged offense alleged in the indictment." Thus, the trial court's charge redirected the jury to the main issues in the case. We find the fourth factor weighed in favor of admission.

The fifth factor refers to evidence such as highly technical or scientific evidence that might mislead the jury because it is not equipped to weigh the probative force of the evidence. *Gigliobianco*, 210 S.W.3d at 641. Here, the evidence in question was neither scientific nor technical and pertained to matters including victim credibility that could easily be understood by a jury. We find the fifth factor weighed in favor of admission.

As to the last factor, Amanda's direct and re-direct testimony comprised approximately five pages of transcript, and Sally's testimony proffered by the State was contained within seven pages. The juvenile records were introduced into evidence via a business records affidavit, and the relevant portions comprised twelve pages, excluding fingerprint cards and a picture of Denelsbeck as a minor. We find that the presentation of the extraneous-offense evidence did not consume an inordinate amount of time. On this record, we conclude that the last factor favored admission.

We find that the trial court, after balancing the Rule 403 factors, could have reasonably concluded that the probative value of the extraneous-offense evidence was not substantially outweighed by the danger of unfair prejudice and the other factors in the rule. Consequently, we

find that the trial court did not abuse its discretion in admitting the extraneous-offense evidence. We overrule this point of error.

*(3)    We Modify the Trial Court's Judgment to Reflect the Correct Name of the Defendant*

The State's original indictment listed the defendant as "John Charles Denelsbeck," but the trial court entered a written order granting the State's motion to modify the indictment to reflect an allegation against "John Charles Denelsbeck, III."  As a result, the jury charge listed the style of the case as "John Charles Denelsbeck, III."  Even so, the trial court's judgment mistakenly identified the defendant as "John Charles Denelsbeck."

"We have the authority to modify the judgment to make the record speak the truth." *Minter v. State*, 570 S.W.3d 941, 944 (Tex. App.—Texarkana 2019, no pet.) (citing TEX. R. APP. P. 43.2(b); *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992); *Rhoten v. State*, 299 S.W.3d 349, 356 (Tex. App.—Texarkana 2009, no pet.)).  This Court may act sua sponte to modify an incorrect judgment.

To reflect the proper name of the defendant, we modify the trial court's judgment to reflect a conviction of "John Charles Denelsbeck, III."  As modified, the trial court's judgment is affirmed.

Josh R. Morriss, III
Chief Justice

Date Submitted:    December 15, 2021
Date Decided:     January 28, 2022

Do Not Publish

14