

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-20-00101-CR

JOHN LEE THOMPSON, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 181st District Court
Randall County, Texas
Trial Court No. 27,151-B, Honorable John B. Board, Presiding

March 21, 2022

## MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and DOSS, JJ.

Appellant, John Lee Thompson, was convicted following a jury trial of four counts of aggravated sexual assault of H.T.,[1] a child, and two counts of indecency by sexual contact with H.T., enhanced by two prior felony convictions.[2] Punishment was assessed

---

[1] To protect the privacy of the victim and the State's extraneous offense witness, we identify them by their initials. *See* TEX. CONST. art. 1 § 30(a)((1) (granting victims of crime "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process").

[2] *See* TEX. PENAL CODE ANN. §§ 21.11(a), 22.021(a)(1)(B), 12.42 (b), (c). Appellant pled guilty to two enhancement paragraphs involving felony convictions for burglary of a building and possession of marijuana.

at six concurrent sentences of confinement for life. In two issues, Appellant asserts (1) the State's evidence at trial was insufficient to support his convictions and (2) the trial court abused its discretion when it admitted the extraneous offense testimony of another alleged victim. We affirm.

Background

The State's amended indictment[3] alleged that on or about July 9, 2016, Appellant intentionally or knowingly caused his sexual organ to contact or penetrate his daughter, H.T.'s anus (count 1); H.T.'s sexual organ (count 2), H.T.'s mouth (count 3); and to cause Appellant's mouth to contact H.T.'s sexual organ (count 4). The indictment also alleged that with the intent to arouse or gratify Appellant's sexual desire, he intentionally or knowingly engaged in sexual contact with H.T. by touching her genitals (count 5), and caused H.T. to engage in sexual contact by causing her to touch Appellant's genitals with her hand (count 6). In March 2020, a three-day jury trial was held.

The State's evidence established that in July 2016, H.T., age five, was placed in "timeout" by her daycare teacher, Bea Gabriella Acosta, after H.T. had made a comment to another student about "licking butts." When Acosta asked where she learned this comment, H.T. replied that her "dad" had taught her. When Acosta pressed for clarification, H.T. said, "[O]h, well, he -- sometimes he licks my butt or my privates."

To make sure she understood what H.T. was telling her, Acosta spoke with H.T. the next day to inquire further. H.T. answered Acosta's questions in a "nonchalant" or

---

[3] The State's original indictment alleged four counts of aggravated sexual assault and two counts of indecency with a child. Prior to trial, the State waived one count of aggravated sexual assault.

2

"conversational" style. H.T. used the terms "butt," to refer to her anus, "front butt" to refer to her vagina, and "privates," to describe Appellant's penis. According to Acosta, H.T. reiterated she and her dad licked each other's "privates." H.T. also told Acosta how her dad put his "privates" into her butt and that "juices had gone into her butt." H.T. described her dad's genitals as "hairy" and "smelly." She said her dad would do these acts to her while they were hiding in the bedroom or bathroom, and that her dad would give H.T. toys or candy "to keep a secret."

Acosta testified H.T. was not confused about who her "dad" was; Appellant regularly picked up H.T. from school. She further testified, "She knew who her dad was, who her sister was. I don't think there was any sort of confusion as to it being anybody else." Thereafter, Acosta notified Child Protective Services.

H.T., age eight and in the third grade at the time of trial, also took the stand to testify. She knew the term, "dad," referred to the Appellant, though she failed to identify Appellant in court. H.T., who had been adopted by another family during the time Appellant's criminal case was pending, testified about remembering when she used to live with her dad and provided details about her room and her home. From the stand, H.T. agreed she used the phrase "private part" to refer to the fronts of boys and girls that should not be seen or touched by others, and to a "butt" in the back. She described Appellant's private part as hairy and located below his belt and referred to a picture resembling a penis she had drawn during the investigation in July 2016. H.T. testified she saw Appellant's private part "a couple times" while sleeping in her father's bed, and that Appellant touched his private part to somewhere on her body.

3

H.T. agreed Appellant hurt her when he placed his private part inside her butt "more than one time." During these occasions, she would lie naked on her "tummy" while Appellant was "in the back of me." She testified that juices would come from his private part. She said she told him to stop. On cross-examination, H.T. testified the last time her dad put his private part in her butt was right before she spoke with Acosta and was removed from daycare. She indicated that after he was finished putting his private part in her butt, they would take a shower together.

H.T. also told the jury she was required to touch Appellant's private part with her hand: "I would have to rub it." She did not recall being required to touch Appellant's private part with her mouth. H.T. testified she knew that what was going on with Appellant was wrong. She said she would get a spanking if she told anyone about what happened at her house.

Louise Wade, a sexual assault nurse examiner (SANE), was called on July 15, 2016, to obtain a history from and to perform an exam on H.T. Wade testified that when she asked H.T. why she was there, "She stated, my daddy played with my private, and she pointed to her female sexual organ, with his tongue because he loves me. He just licked it. I didn't want it to happen, but it did." Wade took swabs from H.T.'s vaginal and anal openings. She testified that H.T. did not have any trauma to her vaginal or anal openings that would be consistent with penetration. The swabs were tested for DNA, but Appellant's DNA was not found.

Lynn Jennings, a licensed professional counselor and sex offender treatment provider, met with H.T. over the course of twenty sessions. During their sessions, H.T. referred to Appellant as "John," "daddy," and "dad." H.T. told Jennings about "a secret of

4

the privates game where we touch each other." When Jennings asked H.T. what her "privates" were, the child identified her vaginal area; the child used the term "butt" when identifying her bottom. Without objection, Jennings testified how the "game" was played:

> [H.T.] said the touching privates game is something she plays with John who's her daddy. She stated he touched my privates with my clothes off. He touched my privates with his hand on the inside of my body. He touched my butt with his privates on the inside of my body and he touched my privates with his privates on the inside of my body . . . and then she said he had me touch his privates with his clothes off. I touched his private with my hand.

When Jennings asked H.T. if there was any other part of Appellant's body that touched her, she said, "I touched his privates when his privates were on the inside of my privates." Jennings also related how H.T. had told her she "cleaned" Appellant's privates with her mouth. H.T. told Jennings that John put his juices in her butt and mouth during the private game, as well as his private in her private, "but not anymore because I'm with my new family and they don't do that." Jennings revealed that H.T. was very nervous about having to tell her story at trial in front of people, especially men, but knew it was important to do so.

In addition to reviewing evidence regarding the alleged sexual assault of H.T., the trial court determined the jury could receive evidence regarding Appellant's alleged sexual assault of another child, "J.E.," as an extraneous offense. *See* TEX. CODE CRIM. PROC. art. 38.27, § 2-a.[4] Over Appellant's objection, J.E. testified that between the ages of

---

[4] Section 2-a provides as follows:

Before [certain extraneous offense] evidence may be introduced, the trial judge must:

eleven and thirteen, he visited Appellant's house with his sister.[5]  Behind Appellant's house sat a back house or shed that contained a computer.  When J.E. visited he would play Appellant's computer games in the shed.  J.E. testified that, at first, Appellant massaged his shoulders and began kissing him on the neck.  Eventually, Appellant and J.E. removed their clothes and engaged in sexual acts.  J.E. performed oral sex on Appellant, and the two would masturbate each other.  Appellant also inserted his fingers and penis in J.E.'s anus.  J.E. testified that Appellant performed these acts many times over the two-year period.  Appellant told J.E. to "keep this between me and you" in a tone J.E. found to be "kind of" threatening.  Eventually, J.E. felt the behavior was wrong and stopped visiting Appellant's house.

During presentation of his defense, Appellant called four witnesses.  Amy Fitzsimmons, Appellant's daughter, testified that while she was living at Appellant's house, she did not remember J.E. ever coming over to visit.  She also testified she saw H.T. daily before she was removed from daycare and never observed anything inappropriate.  She described her father's relationship with H.T. as a loving father-daughter relationship.

Cheryl Canales, a CPS investigator, testified she was assigned to investigate H.T.'s outcry after a call was received from H.T.'s daycare.  She indicated there was a previous CPS case involving H.T. wherein H.T. described a recurring nightmare involving

---

(1)  determine that the evidence likely to be admitted at trial will be adequate to support a finding by the jury that the defendant committed the separate offense beyond a reasonable doubt; and

(2)  conduct a hearing out of the presence of the jury for that purpose.

[5] Appellant was a co-worker and friend of J.E.'s father.

6

a man's hand touching or grabbing her. CPS ruled out neglectful supervision by Appellant in the previous case because no evidence of abuse or sexual assault was discovered.

Hester Harold also took the stand to testify about the care of H.T., as well as a twelve-page statement she had provided to the Amarillo Police Department. Mrs. Harold testified she was the wife of one of Appellant's co-workers. When H.T. was still a newborn, Appellant asked Mrs. Harold to assist him in caring for H.T.; that responsibility continued until June 2015 when the child was four and a half.[6] Harold initially testified H.T. always appeared to be cared for and bathed, and Appellant appeared to bond with his daughter. Nevertheless, Mrs. Harold said she "was always worried about [H.T.] when she was with John, but I never had any reasonable evidence to prove that there was a problem."

Mrs. Harold's concern about H.T. grew the longer she kept the child. As H.T. became older, she did not want to go with Appellant; her temperament changed. When the time came to return home with Appellant, H.T. would beg Mrs. Harold to not make her go, would cling to her, or try to hide. Mrs. Harold testified H.T. was terrified when Appellant came to pick her up. On one or two occasions, H.T. attempted to run away from the Harolds' house so she would not have to return home. H.T. also began wetting the bed, despite being potty trained, and said she was afraid of the dark. Mrs. Harold observed that when H.T. would play with Barbie dolls, "She would take off their clothes and she would start having them do inappropriate things with each other." A year after

---

[6] H.T. was born in a prison infirmary.

7

Mrs. Harold ceased caring for the child, H.T. made the outcry to her daycare teacher that resulted in Appellant's criminal investigation.

Sarah Foster, a friend who lived with Appellant during some of the relevant period testified about her interactions with Appellant. In July 2016, Foster accompanied Appellant to the police station where he was interviewed by detectives regarding H.T. When asked at trial if Appellant had answered the questions honestly, Foster replied, "As far as I know, yes, sir." During her observations, she never saw Appellant have any inappropriate contact with H.T.

Nevertheless, Foster testified that after the investigation into Appellant began and H.T. was removed from the home, she began to suspect that H.T. had been sexually abused. For example, when H.T. was taken for the SANE assessment, Appellant told Foster he was worried they would find his DNA inside H.T.'s body. When Foster asked how that was possible, Appellant claimed he had intercourse with his girlfriend the night before and that the girlfriend and H.T. had taken a bath together the next day. Appellant expressed the fear that the "little swimmers" somehow swam through the bathwater and inside H.T.

After the close of evidence, the jury found Appellant guilty on all counts.

Analysis

*Issue One: Sufficiency of the Evidence*

A person commits the offense of indecency with a child by sexual contact by engaging in sexual contact with a child who is younger than 17 years of age. TEX. PENAL CODE ANN. § 21.11(a). Here, "sexual contact" means touching, with the intent to arouse

8

or gratify the sexual desire of any person, the child's anus, breast, or any part of child's genitals, including through clothing; or, with the requisite intent, touching any part of the child's body, including through clothing, with the anus, breast, or any part of the genitals of a person. *Id.* at § 21.11(a)(1), (c).

A person commits the offense of aggravated sexual assault of a child younger than fourteen years of age if the person intentionally or knowingly (1) causes the penetration of the anus or sexual organ of a child by any means; (2) causes the penetration of the mouth of a child by the sexual organ of the actor; (3) causes the sexual organ of a child to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor; (4) causes the anus of a child to contact the mouth, anus, or sexual organ of another person, including the actor; or (5) causes the mouth of a child to contact the anus or sexual organ or another person, including the actor. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B).

Appellant asserts the State's evidence was insufficient because (1) H.T. did not identify Appellant in open court as the perpetrator; (2) there was no physical evidence to corroborate H.T.'s testimony, i.e*.,* the SANE examination showed no trauma to her body and Appellant's DNA was not identified on H.T.'s body; and (3) H.T. was unable to tell her story without the State using leading questions during direct examination.

In reviewing the sufficiency of the State's evidence to support a conviction, we consider the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Stahmann v. State*, 602 S.W.3d 573, 577 (Tex. Crim. App. 2020) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)).

9

We consider both direct and circumstantial evidence as well as all reasonable inferences that may be drawn from the evidence. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient to establish guilt. *Nisbett v. State*, 552 S.W.3d 244, 262 (Tex. Crim. App. 2018); *Temple v. State*, 390 S.W.3d 341, 359 (Tex. Crim. App. 2013). Moreover, "[e]ach fact need not point directly and independently to the guilt of the defendant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Walker v. State*, 594 S.W.3d 330, 335 (Tex. Crim. App. 2020).

The uncorroborated testimony of either the child or an outcry witness is sufficient to support a conviction for sexual assault of a child or indecency with a child. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07(a) ("conviction under Chapter 21 . . . is supportable on the uncorroborated testimony of the victim of the sexual offense if the victim informed any person, other than the defendant, of the alleged offense . . .."); *Garcia v. State*, 563 S.W.2d 925, 928 (Tex. Crim. App. 1978) (aggravated sexual assault of a seventeen-year-old); *Jones v. State*, 428 S.W.3d 163, 169-70 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (indecency with a child). The State has no burden to proffer any physical, medical, or other evidence to corroborate the victim's testimony. *Garcia*, 563 S.W.2d at 928; *Wallace v. State*, No. 07-09-00099-CR, 2011 Tex. App. LEXIS 1384, at *7-8 (Tex. App.—Amarillo Feb. 23, 2011, no pet.) (mem. op., not designated for publication). We also resolve any evidentiary inconsistencies in favor of the verdict, keeping in mind that the factfinder is the exclusive judge of the facts, the credibility of the witnesses, and the weight to be given their testimony. *Walker*, 594 S.W.3d at 255; *see* TEX. CODE CRIM. PROC. ANN. art. 38.04.

10

Identity of the Perpetrator

The identity of a perpetrator may be proven either by direct or circumstantial evidence. *See Earls v. State*, 707 S.W.2d 82, 85 (Tex. Crim. App. 1986). The absence of an in-court identification does not render the evidence insufficient on the issue of identity. *See Couchman v. State*, 3 S.W.3d 155, 162 (Tex. App.—Fort Worth 1999, pet. ref'd) (citing *Meeks*, 897 S.W.2d at 954-55). Rather, the question of if a victim can identify the defendant at trial goes to the weight and credibility of the witness and is a matter for the jury's consideration. *Meeks v. State*, 897 S.W.2d 950, 955 (Tex. App.—Fort Worth 1995, no pet.). Here, the jury heard and observed ample evidence that H.T. identified Appellant and "dad" as one in the same. H.T. testified Appellant was her "father" and that she called him "dad." In her description of the sexual abuse inflicted on her, she described her perpetrator as "daddy" and "father."

In addition, Acosta further confirmed that when H.T. made an outcry, the child referred to "dad" and testified H.T. had no confusion regarding who her dad was. In her recitation to Wade, H.T. referred to "daddy" as her perpetrator; she acted terrified and tried to avoid going home with Appellant when he came to pick up the child. H.T. described her sexual abuse to Jennings by interchangeably calling her perpetrator "John," "daddy," and "dad." H.T. told Jennings the abuse ended when she went to live with a new family. Finally, there was certainly no question that Foster knew who Appellant was; the jury had the opportunity to assess the credibility of Appellant's explanation to Foster of why his DNA might be found in H.T.'s body. We find that this evidence is sufficient for a rational juror to conclude beyond a reasonable doubt that Appellant was the perpetrator of the offenses alleged in the indictment.

11

Evidence of the Offenses

The absence of physical evidence does not lead us to the conclusion there is insufficient evidence to support the jury's verdicts. Regarding Appellant's complaint about a lack of physical/DNA evidence, we note that the State has no burden to proffer any physical, medical, or other evidence to corroborate H.T.'s testimony or statements to others. *See Garcia*, 563 S.W.2d at 928; *Wallace*, 2011 Tex. App. LEXIS 1384, at *7-8.

The victim in this case was age four or five when the abuse occurred; she testified when age eight. The State presented testimonial evidence from numerous witnesses, including the child, regarding the terms the child used to describe her genitals, her anus, and Appellant's genitals. This includes testimony from Jennings and Wade who said H.T. referred to her genital area when describing her "private." H.T. also sufficiently communicated to numerous witnesses and the jury that reference to Appellant's "privates" meant his penis; at age five, H.T. drew a picture of Appellant's private part that provided further clarification for the jury. H.T. also sufficiently described her "butt" to numerous witnesses as referring to her anus.

At trial, Jennings testified how H.T. described Appellant penetrating H.T.'s vagina with his hand and penis. H.T. also told the jury she would have to rub Appellant's penis. Jennings, Acosta, and Wade each described instances in which H.T. told them she and Appellant would perform oral sex on each other. H.T. testified Appellant hurt her when he placed his "private part" inside her "butt," and that it occurred "more than one time." Acosta's and Jennings' testimony corroborated what H.T. said at trial. Numerous witnesses also recounted that H.T. said Appellant's "juices" would go into H.T.'s body when he penetrated her.

12

Even if there was any question regarding the meaning of H.T.'s terms for her and Appellant's anatomy, the jury was also permitted to infer that Appellant sexually penetrated and ejaculated inside of H.T. from Foster's testimony, who described Appellant's stunning proffer of how his DNA might have gotten inside H.T.'s body. All of this constitutes sufficient evidence upon which a rational jury could find, beyond a reasonable doubt, that Appellant committed the aggravated sexual assaults and indecent acts against H.T. as alleged in the indictment. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07(a); *Garcia*, 563 S.W.2d at 928; *Jones*, 428 S.W.3d at 169-70. *See also Villalon v. State*, 791 S.W.2s 130, 134 (Tex. Crim. App. 1990) (concluding child victim's unsophisticated terminology alone established element of penetration beyond a reasonable doubt); *Satterwhite v. State*, 499 S.W.2d 314, 315 (Tex. Crim. App. 1973) (holding unsophisticated testimony that defendant placed "his male organ into her private parts" was sufficient to sustain conviction).

<u>Use of Leading Questions During H.T.'s Direct Examination</u>

For his next subpart of his first issue, Appellant does not cite any authority for the proposition that a child's direct examination testimony should be given no weight when made in response to leading questions. Appellant does not complain on appeal that the trial court erred in permitting the State to ask leading questions. While the Texas Rules of Evidence *discourage* the use of leading questions in some instances, they are not forbidden. *See* TEX. R. EVID. 611(c) (leading questions "should not be used on direct examination except as necessary to develop the witness's testimony"). "In cases dealing with child witnesses, the rule against leading questions is somewhat relaxed"; *Clark v. State*, 952 S.W.2d 882, 886 (Tex. App.—Beaumont 1997, no pet.) (citing *Moon v. State*,

13

856 S.W.2d 276, 279 (Tex. App.—Fort Worth 1993, pet. ref'd). There is nothing in the record (and Appellant does not direct us to any), of an instance in which the State's question to H.T. instructed the child how to answer.

Appellant does not complain about his ability to use leading questions when cross-examining H.T. and other witnesses, and our standards for reviewing the evidence do not distinguish between testimony obtained during direct or cross-examination. We hold that H.T.'s direct examination testimony was competent evidence in addition to the other evidence upon which the jury could have found beyond a reasonable doubt that Appellant committed the offenses in the indictment. Appellant's first issue is overruled.

*Issue Two: Admission of Extraneous Offense Testimony*

In his second issue, Appellant asserts the trial court abused its discretion when it admitted J.E's extraneous offense testimony. Specifically, he contends the trial court erred by finding the State's evidence during the pre-admission hearing was not "adequate to support a finding by the jury that the defendant committed the separate offense beyond a reasonable doubt." *See* TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2-a.

Article 38.37 is an evidentiary rule enacted by the legislature and is limited to certain designated offenses. *Hitt v.* State, 53 S.W.3d 697, 705 (Tex. App.—Austin 2001, pet. ref'd). As such, a trial court's ruling on the admissibility of extraneous offense evidence under the statute is reviewed for an abuse of discretion. *See Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011); *Bradshaw v. State,* 466 S.W.3d 875, 882 (Tex. App.—Texarkana 2015, pet. ref'd) (applying same standard of review to admissibility determination under article 38.37). "As long as the trial court's ruling is within

14

the 'zone of reasonable disagreement,' there is no abuse of discretion, and the trial court's ruling will be upheld." *Id.* A trial court's ruling on extraneous offense evidence is generally within this zone if there is evidence supporting that an extraneous offense is relevant to a material, non-propensity issue. *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001). If the trial court's evidentiary ruling is correct on any theory of law applicable to that ruling, it will not be disturbed, even if the trial judge gave the wrong reason for his correct ruling. *Henley v. State*, 493 S.W.3d 77, 94 n.35 (Tex. Crim. App. 2016) (citing *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009)).

By statute, when a defendant is tried for a sexual offense committed against a child under seventeen years of age, the State may, notwithstanding Rules 404 and 405 of the Texas Rules of Evidence, introduce evidence that the defendant has committed a separate sexual offense against another child "for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant." Article 38.37, §§ 1-2. Thus, in cases like the one before us, article 38.37 permits the introduction of extraneous offense evidence "in a trial of a defendant for the enumerated sexual crimes against children that the defendant has committed certain offenses against a *nonvictim* of the charged offense." *Belcher v. State*, 474 S.W.3d 840, 844 (Tex. App.—Tyler 2015, no pet.) (emphasis supplied, cleaned up).

Notwithstanding the statutory exception, a defendant's right to a fair trial is protected by procedural safeguards in the statute. *Harris v. State*, 475 S.W.3d 395, 403 (Tex. App.—Houston [14th Dist.] 2015, pet, ref'd). Before evidence described by article 38.37, section 2 may be introduced, the trial judge must conduct a hearing, outside the

15

presence of the jury, to "determine that the evidence likely to be admitted at trial will be adequate to support a finding by the jury that the defendant committed the separate offense beyond a reasonable doubt." Article 38.37, § 2-a(1)-(2). *See Harris*, 475 S.W.3d at 403. At the hearing, defense counsel has the right to challenge any witness's testimony on cross-examination. *Id.* at 402. The State must also give the defendant notice of its intent to introduce this evidence in its case-in-chief not later than the thirtieth day before the date of defendant's trial. *Id.* (citing article 38.37, § 3). Lastly, the admission of evidence under article 38.37 is limited by the balancing test in Rule 403 of the Texas Rules of Evidence, which permits admission of evidence as long as its probative value is not substantially outweighed by its potential for unfair prejudice. *Fahmi v. State*, 473 S.W.3d 486, 492 (Tex. App.—Texarkana 2015, pet. ref'd). *See* TEX. R. EVID. 403.[7]

J.E.'s testimony at the article 38.37 hearing was substantially similar to his trial testimony. That is, at the age of eleven, Appellant allowed him to play computer games in the building behind his house. As with his trial testimony, J.E. told the court about how Appellant's behavior progressed from massaging J.E.'s shoulders, to kissing J.E.'s neck, to Appellant and J.E. performing sexual acts. Thus, his testimony at the hearing, standing alone without corroboration would be sufficient to establish the elements to support a conviction for aggravated sexual assault of a child and indecency with a child. *See* article 38.37(a), (b)(1); TEX. PENAL CODE ANN. §§ 21.11(a), 22.021(a)(1)(B).

Appellant asserts the evidence during the article 38.37 hearing was deficient because J.E. made an outcry four years after the abuse, did not make a report to law

---

[7] Appellant does not challenge admission of J.E.'s testimony at trial under Rule 403 of the Texas Rules of Evidence.

enforcement, could not recall specific dates and times, and no physical evidence corroborated his account of the abuse. These facts, or lack thereof, go to the weight to be given J.E.'s testimony or his credibility. In an article 38.37 hearing, the trial court is the fact finder and as such, is the sole arbiter of the credibility of the witness and the weight given to his or her testimony. *Johnson v. State*, 571 S.W.2d 170, 173 (Tex. Crim. App. 1979). The trial court can resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences therefrom. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We presume the trial court found J.E. credible and gave weight to his testimony. *Anderson v. State*, 416 S.W.3d 884, 888 (Tex. Crim. App. 2013). Accordingly, we find the trial court did not abuse its discretion following the pre-admission hearing by finding J.E.'s testimony was adequate to support a finding by the jury that Appellant sexually abused J.E. beyond a reasonable doubt under article 38.37. Appellant's second issue is overruled.

## Conclusion

We overrule all of Appellant's issues on appeal and affirm the judgment of the trial court.

Lawrence M. Doss
Justice

Do not publish.

17