

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-22-00042-CR

CRAIG MERLIN WILD, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 336th District Court
Fannin County, Texas
Trial Court No. 21205

Before Morriss, C.J., Stevens and van Cleef, JJ.
Memorandum Opinion by Justice Stevens

# MEMORANDUM OPINION

A Fannin County jury found Craig Merlin Wild guilty of two counts of aggravated sexual assault of Lisa, a child, and one count of indecency by contact with Lisa[1]  The trial court sentenced Wild to life in prison for each of the aggravated sexual assault convictions, and it sentenced him to twenty years in prison on the indecency conviction.

On appeal, Wild contends that the trial court erred by (1) admitting extraneous-offense evidence over his Rule 403 objection and (2) improperly commenting on the evidence in the court's charge.  Because we find (1) that the trial court did not abuse its discretion in admitting the extraneous-offense evidence and (2) that the erroneous jury charge did not harm Wild, we affirm the trial court's judgments.

## I.     Background

Lisa was thirty-one years old at the time of trial.[2]  She testified that she grew up living with her parents in Fannin County, Texas.  In 2002 and 2003, when she was twelve years old, her parents separated and divorced.  After the divorce, she and her two siblings, Karen and Robert,

---

[1]To protect the identity of victims who were minors at the time of the alleged offenses, we refer to them by pseudonyms.  *See* TEX. R. APP. P. 9.10(a)(3).

[2]In 2007, a Fannin County jury found Wild guilty of two counts of aggravated sexual assault of a child and one count of indecency with a child.  *Wild v. State*, No. 06-06-00124-CR, 2007 WL 3119270, at *1 (Tex. App.— Texarkana Oct. 26, 2007, pet. ref'd) (mem. op., not designation for publication).  The trial court in 2007 sentenced Wild to life in prison "for each of the [sexual] assault counts and twenty years' confinement on the indecency count, along with a $5,000.00 fine for each count."  *Id.*  This Court affirmed Wild's conviction and sentence.  *Id.* at *4. The Texas Court of Criminal Appeals granted Wild's petition for a writ of habeas corpus and ordered a new trial. *Ex parte Wild*, No. WR-89,510-01, 2021 WL 115570 (Tex. Crim. App. Jan. 13, 2021) (per curiam).  The retrial was held in March 2022.

lived with Wild every other week for a while and then, eventually, only stayed with him on weekends. She testified that, during her visits to Wild's house, he would sexually assault her.

Lisa testified that she was first assaulted in 1999 or 2000, when she was nine or ten years old. She remembered that it happened in Wild's bedroom when they were alone. Wild was massaging her back, but "his hands had started to wander," and he touched her vagina over her clothes. From then on, the abuse occurred "[e]very day." It usually happened in his bedroom, with the door locked, when they were alone. "Different things would happen different days." Lisa testified that he pulled her pants down, "touch[ed] [her] vagina," and put his finger inside her vagina. Later, he licked her vagina and put his tongue inside of her. She described Wild making her masturbate him until he ejaculated. She said there would be pornography playing on the television during the abuse. Lisa also described similar abuse happening in the shower and when they would go swimming at Bonham State Park.

At the time of the abuse, Lisa did not tell anyone. Wild bribed her with "[t]oys, sports, haircuts." Wild warned her that she would "deeply regret it" if she told anyone. He told her that "he would cause physical harm and/or kill [her]" if she ever said anything about the abuse. Lisa testified that Wild told her that, if she did not allow him to abuse her, he would also do it to her brother or sister. Lisa believed him. Her siblings had "no idea" that she was "protecting them."

The abuse continued until 2004, when Lisa made an outcry of abuse while on a skating trip with a church youth group.[3] She testified that, while talking with her friends complaining

---

[3]At the time of Lisa's outcry, she and her sister were living with their mother and visiting Wild on the weekends. Her brother, Robert, was living with Wild.

about their parents, "[i]t slipped" out. Afterwards, she told her youth pastor and his wife, who was her grandmother. The next day, Lisa and her grandmother told her mother. That triggered an investigation by the Fannin County Sheriff's Office and a subsequent forensic interview at the Fannin County Children's Center. The forensic interview scared her "to death" because she was afraid of the possible consequences. Lisa said that she refused a sexual assault nurse examination being done on her because she was "uncomfortable," "ashamed," and "very scared." Also, because there had been no penile penetration, she did not see the point of enduring the examination. Lisa reiterated that Wild had only penetrated her with his finger and his tongue.

Lisa's brother, Robert, testified over Wild's Rule 403 objection. The trial court granted Wild a running objection to Robert's extraneous-offense testimony. Robert was twenty-four years old at the time of trial. He testified that, when he was a child and his parents separated, he lived primarily with Wild. When Lisa made her outcry of abuse against Wild, Robert did not believe her. Wild told him that, if Robert allowed Wild to sexually abuse him, the abuse would not happen to Lisa. However, Robert admitted that he remembered occasions when Wild would take Lisa into his bedroom, lock the door, and they would be in there for hours.

Robert explained that Wild started sexually abusing him when he was seven or eight years old. The first time the abuse happened, Robert and Wild were in Wild's bedroom on the bed, in their underwear, watching TV. Wild removed Robert's underwear and started touching his genitals. Wild eventually had Robert touch his penis and perform oral sex. Robert testified that his penis would penetrate Wild's mouth and Wild's penis would penetrate Robert's mouth.

4

The abuse occurred most often in Wild's bedroom. It was "pretty much an everyday occurrence," and it increased in frequency after his parents separated. Wild would close and lock the bedroom door and watch pornography during the abuse. Robert testified that the abuse would also happen at times in Wild's mechanic shop and in Wild's truck.

Robert testified that Wild would buy him toys to keep him "silent." When Robert resisted Wild's abuse, he would physically force Robert to participate in the abuse, and at times, Wild would react to resistance by punching Robert in the stomach. Robert did not tell anyone about the abuse because he was afraid for his life. Wild told him that they would "take this to the grave," which Robert took to mean that, if he told anyone, Wild would send him to the grave. Robert testified that Wild would listen in on his phone calls when he spoke with friends and that he did the same with Lisa and their mother.

On one occasion, Robert threatened to tell someone about the abuse. It happened when Wild was driving Robert home from Denison Dam and they were arguing. In response, Wild tried to drive the truck into the lake, but Robert grabbed the steering wheel.

Robert testified that the abuse stopped after Lisa's outcry because he went to live with his mother, as she had obtained full custody over him, Lisa, and their sister. He was eleven or twelve years old at the time of Lisa's outcry.

When he was nineteen years old, Robert and some friends were driving over Denison Dam, and he had a flash back of Wild trying to drive them into the lake. Robert "freaked out" and had a panic attack. His friends pulled the truck over, and he called Lisa and "told her everything." He told her, "I believe you. It happened to me too." She was the first person that

5

Robert told about the abuse that he had suffered. He told her first because he "realized it actually happened to her. Everything started clicking, making sense."

Lisa and Robert were the only witnesses during the guilt/innocence phase of the trial. After all parties rested and made their closing arguments, the jury found Wild guilty of two counts of aggravated sexual assault of Lisa, a child, and one count of indecency with Lisa, a child. After a proceeding on punishment, the trial court sentenced Wild to life in prison for each of the sexual assault counts and twenty years' confinement on the indecency count, along with a $10,000.00 fine for each of the three counts.

## II. Robert's Testimony Was Admissible Under Rule 403

In his first point of error, Wild argues that the trial court erred by allowing Robert to testify to extraneous abuse perpetrated by Wild over Wild's Rule 403 objection. Wild contends that the probative value of Robert's testimony was substantially outweighed by the danger of unfair prejudice.

"[A] trial court's ruling on the admissibility of extraneous offenses is reviewed under an abuse-of-discretion standard." *Bradshaw v. State*, 466 S.W.3d 875, 878 (Tex. App.—Texarkana 2015, pet. ref'd) (quoting *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011)). "A trial court does not abuse its discretion if the decision to admit evidence is within the 'zone of reasonable disagreement.'" *Id.* (quoting *Marsh v. State*, 343 S.W.3d 475, 478 (Tex. App.—Texarkana 2011, pet. ref'd)). "If the trial court's decision on the admission of evidence is supported by the record, there is no abuse of discretion, and the trial court will not be reversed." *Id.* (quoting *Marsh*, 343 S.W.3d at 478). "In determining whether the trial court abused its

6

discretion, '[w]e may not substitute our own decision for that of the trial court.'" *Id.* (quoting *Marsh*, 343 S.W.3d at 478).

By statute, when a defendant is tried for a sexual offense committed against a child under seventeen years of age, the State may, notwithstanding Rules 404 and 405 of the Texas Rules of Evidence, introduce evidence that the defendant has committed a separate sexual offense against another child "for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant." TEX. CODE CRIM. PROC. ANN. art. 38.37, §§ 1–2 (Supp.). Thus, in cases like the one before us, Article 38.37 "permits the introduction of evidence 'in a trial of a defendant for the enumerated sexual crimes against children . . . that the defendant has committed certain offenses against a *nonvictim* of the charged offense.'" *Harty v. State*, 552 S.W.3d 928, 933 (Tex. App.—Texarkana 2018, no pet.) (quoting *Belcher v. State*, 474 S.W.3d 840, 844 (Tex. App.—Tyler 2015, no pet.)).

Even so, "the admission of evidence under Article 38.37 'is limited by Rule 403's balancing test, which permits admission of evidence as long as its probative value is not substantially outweighed by its potential for unfair prejudice.'" *Fahrni v. State*, 473 S.W.3d 486, 492 (Tex. App.—Texarkana 2015, pet. ref'd) (quoting *Bradshaw*, 466 S.W.3d at 882). When conducting a Rule 403 balancing test, the court

> must balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that

7

> presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006). In any given case, "these factors may well blend together in practice." *Id.* at 642.

With respect to the first factor in the balancing test, evidence of a separate sexual offense against a child admitted under Article 38.37 is probative on the issues of intent and a defendant's character or propensity to commit sexual assaults on children. *See Bradshaw*, 466 S.W.3d at 883; TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(b). Here, the evidence was particularly probative of Wild's propensity to sexually assault children who were members of his family.[4] We conclude that this factor weighed strongly in favor of admission.

As to the second factor, Wild's opening statement focused on the State's dearth of evidence, and his closing argument challenged the credibility of Lisa and Robert. By adopting Article 38.37, Section 2, the Legislature recognized that, in child sex offenses, "there is typically very little evidence to assist prosecutors with proving their cases." *Bradshaw*, 466 S.W.3d at 884 (quoting Senate Comm. on Criminal Justice, Bill Analysis, Tex. S.B. 12, 83d Leg., R.S. (2013)). Because there was no biological evidence, there was no third-party eyewitness to the alleged incidents, and Wild challenged Lisa's credibility, the State had a considerable need for

---

[4]"Remoteness of an extraneous offense is properly considered in determining whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice." *Harty*, 552 S.W.3d at 935 (citing *Newton v. State*, 301 S.W.3d 315, 320 (Tex. App.—Waco 2009, pet. ref'd) (concluding that the "remoteness of the extraneous-offense evidence significantly lessens its probative value" but finding the twenty-five-year-old-extraneous-offense evidence admissible)). However, we do not believe here that the "remoteness of the extraneous offenses rendered the probative value of this evidence so weak as to render this evidence inadmissible under Rule 403." *Id.* This is because the Texas Rules of Evidence "favor the admission of all logically relevant evidence for the jury's consideration." *Montgomery v. State*, 810 S.W.2d 372, 375 (Tex. Crim. App. 1990) (op. on reh'g).

the evidence. "Rule 403 'should be used sparingly to exclude relevant, otherwise admissible evidence that might bear on the credibility of either the defendant or complainant in such 'he said, she said' cases [involving sexual assault].'" *Id.* at 883–84 (alteration in original) (quoting *Hammer v. State*, 296 S.W.3d 555, 562 (Tex. Crim. App. 2009)). Accordingly, the second factor also weighs in favor of admission.

Regarding the third factor, this Court recognizes that the inherently inflammatory and prejudicial nature of Wild's extraneous offenses against Robert tends to suggest a verdict on an improper basis. *See Newton v. State*, 301 S.W.3d 315, 320 (Tex. App.—Waco 2009, pet. ref'd). Therefore, the third factor weighs against admission.

As to the fourth factor, the issue in this case was whether Wild had committed the acts of sexual abuse against Lisa as alleged in the State's indictment. The trial court mitigated the tendency of the extraneous-offense evidence to confuse or distract the jury from the main issues at trial by its charge. Specifically, the trial court identified for the jury the elements the State was required to prove by its indictment and instructed the jury that it could consider the extraneous-offense evidence only if it found Wild had committed the extraneous offenses beyond a reasonable doubt, and then, if it made that finding, that it could only consider the evidence for its bearing on matters relevant to determining whether Wild committed the acts alleged in the indictment. Because the jury was redirected to the main issues in the case, we find that the fourth factor weighs in favor of admission.

The fifth factor refers to evidence such as highly technical or scientific evidence that might mislead the jury because the jury is not equipped to weigh the probative force of the

9

evidence. *See Gigliobianco*, 210 S.W.3d at 641. Here, the evidence in question was neither scientific nor technical and pertained to matters, including victim credibility, that could easily be understood by a jury. We find that the fifth factor weighs in favor of admission.

As to the sixth and final factor, Robert's extraneous-offense testimony on direct examination comprised approximately twenty-three pages of transcript in a multi-day trial. Therefore, we find that the presentation of the extraneous-offense evidence did not consume an inordinate amount of time. On this record, we conclude that the last factor favors admission.

We find that the trial court, after balancing the Rule 403 factors, could have reasonably concluded that the probative value of Robert's extraneous-offense evidence was not substantially outweighed by the danger of unfair prejudice and the other factors in the rule. Consequently, we find that the trial court did not abuse its discretion in admitting the evidence. As a result, we overrule Wild's first point of error.

## III. The Charge Included an Erroneous Instruction, But the Error Was Harmless

The trial court's charge in both counts of aggravated sexual assault included the following definition:

> Our law provides that a person commits the offense of Aggravated Sexual Assault of a Child if . . . the person intentionally or knowingly causes the sexual organ of a child to contact or penetrate the mouth of another person, including the actor OR causes the penetration of the sexual organ of a child by any means. *Penetration is complete however slight.*

(Emphasis added). In his second point of error, Wild contends that the trial court erred by including the phrase "[p]enetration is complete however slight" because it was a comment on the weight of the evidence.

10

"We employ a two-step process in our review of alleged jury-charge error." *Murrieta v. State*, 578 S.W.3d 552, 554 (Tex. App.—Texarkana 2019, no pet.) (citing *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994)). "Initially, we determine whether error occurred and then evaluate whether sufficient harm resulted from the error to require reversal." *Id.* (quoting *Wilson v. State*, 391 S.W.3d 131, 138 (Tex. App.—Texarkana 2012, no pet.) (citing *Abdnor*, 871 S.W.2d at 731–32)).

We first determine whether the court's instruction was erroneous. "[T]he jury is the exclusive judge of the facts, but it is bound to receive the law from the court and be governed thereby." *Id.* (quoting TEX. CODE CRIM. PROC. ANN. art. 36.13). The purpose of a jury charge is to instruct the jury on the applicable law, and a charge must include an accurate statement of the law. *See* TEX. CODE CRIM. PROC. ANN. art. 36.14. Moreover, the trial court must apply the law to the facts adduced at trial. *Gray v. State*, 152 S.W.3d 125, 127 (Tex. Crim. App. 2004). A trial court may not submit a charge that comments on the weight of the evidence. *See* TEX. CODE CRIM. PROC. ANN. art. 36.14. "A trial court comments on the weight of the evidence if the charge 'assumes the truth of a controverted issue,' *Whaley v. State*, 717 S.W.2d 26, 32 (Tex. Crim. App. 1986), or 'directs undue attention' to particular evidence," *Giesberg v. State*, 945 S.W.2d 120, 124 (Tex. App.—Houston [1st Dist.] 1996[, pet. ref'd]) . . . ." *Lacaze v. State*, 346 S.W.3d 113, 118 (Tex. App—Houston [14th Dist.] 2011, pet. ref'd). "In determining whether the charge improperly comments on the weight of the evidence, we consider the court's charge as a whole and the evidence presented at trial." *Id.*

11

"As a general matter, definitions for terms that are not statutorily defined are not considered to be the 'applicable law' under [Texas Code of Criminal Procedure] Article 36.14, and it is thus generally impermissible for the trial court to define those terms in the jury instructions." *Green v. Texas*, 476 S.W.3d 440, 445 (Tex. Crim. App. 2015). The term "penetration" is not defined by statute. In a prosecution for aggravated sexual assault of a child, the term "penetration" is a "common term[] that [has] not acquired a technical meaning"; thus, the term is "to be interpretated by the jury according to common usage." *Id.* at 445. Therefore, a trial court errs by including a definition of "penetration" in the charge because it constitutes a comment on the weight of the evidence.[5] *Id.* at 445–46.

In *Green*, the trial court erred by instructing the jury that penetration of a female sexual organ was something that "occurs so long as contact with the female sexual organ could reasonably be regarded by ordinary English speakers as more intrusive than contact with the outer vaginal lips and is complete, however slight, if any." *Id.* at 444. In *Trevino v. State*, this Court held that that trial court erred by instructing the jury that penetration was "penetration of any degree."[6] *Trevino v. State*, No. 06-15-00165-CR, 2016 WL 2997392, at *6 (Tex. App.—Texarkana May 25, 2016, no pet.) (mem. op., not designated for publication) (citing *Green*, 476 S.W.3d at 446–47). Similarly, in *Manrrique v. State*, the trial court erred by instructing the jury

---

[5]"Although an appellate court may articulate a definition of a statutorily undefined, common term in assessing the sufficiency of the evidence . . . a trial court's inclusion of that definition in a jury charge may constitute an improper comment on the weight of the evidence." *Green*, 476 S.W.3d at 446 (quoting *Kirsch v. State*, 357 S.W.3d 645, 652 (Tex. Crim. App. 2012)).

[6]"Although unpublished opinions have no precedential value, we may take guidance from them 'as an aid in developing reasoning that may be employed.'" *Rhymes v. State*, 536 S.W.3d 85, 99 n.9 (Tex. App.—Texarkana 2017, pet. ref'd) (quoting *Carrillo v. State*, 98 S.W.3d 789, 794 (Tex. App.—Amarillo 2003, pet. ref'd)).

that as to the offense of aggravated sexual assault, "penetration is complete regardless of how slight." *Manrrique v. State*, No. 02-19-00458-CR, 2021 WL 4205011, at *3–4 (Tex. App.—Fort Worth Sept. 16, 2021, no pet.) (mem. op., not designated for publication) (citing *Green*, 476 S.W.3d at 446–47); *but see Turner v. State*, 626 S.W.3d 88, 97–99 (Tex. App.—Dallas 2021, no pet.) (citing *Green*, 476 S.W.3d at 444) (court of appeals held that "penetration is complete however slight" was a proper instruction under *Green*). Here, the trial court's instruction that "[p]enetration is complete however slight" mirrors those in *Green*, *Trevino*, and *Manrrique*. Thus, the instruction was error.

When we have found error in the trial court's jury charge, we next "evaluate whether sufficient harm resulted from the error to require reversal." *Wilson v. State*, 391 S.W.3d 131, 138 (Tex. App.—Texarkana 2012, no pet.). Where, as here, the defendant objected to the erroneous part of the charge, he must demonstrate only that he suffered some harm to obtain a reversal. *Arline v. State*, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986). While this harm must be "actual, rather than theoretical," "the presence of *any* harm, regardless of degree, which results from preserved charging error, is sufficient to require a reversal of the conviction." *Id.* It is the appellant's burden to "persuade the reviewing court that he suffered *some actual harm* as a consequence of the charging error. If he is unable to do so, the error will not result in a reversal of his conviction." *LaPoint v. State*, 750 S.W.2d 180, 191 (Tex. Crim. App. 1986) (op. on reh'g). The effect of the error must be considered "in light of the entire jury charge, the state of the evidence, including the contested issues and the weight of probative evidence, the arguments of counsel and any other relevant information revealed by the record of the trial as a whole."

13

*Sanchez v. State*, 376 S.W.3d 767, 774–75 (Tex. Crim. App. 2012) (quoting *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985)).

Other than the improper instruction, the trial court's charge was a correct rendering of applicable law. The trial court's erroneous instruction was brief. The instruction was "'mild, neutral,' and describe[d] an obvious[,] common-sense proposition,' and thus . . . would not have impinged on the jury's fact-finding authority." *Green*, 476 S.W.3d at 447 (quoting *Brown v. State*, 122 S.W.3d 794, 803 (Tex. Crim. App. 2003)).

Also, penetration was a central issue for the jury's consideration. "[P]enetration of the complainant's sexual organ was a critical element of the offense." *Id.* The State raised the issue of penetration in its opening statement. Penetration was brought up multiple times during the direct examination of Lisa and Robert. Thus, "the jury's focus would have been on this element of the offense regardless of the inclusion of the [instruction]." *Id.* As a result, the charge, considered as a whole, weighs against a finding of harm.

The State made no reference to the challenged instruction in its closing argument. Instead, the State focused its argument on the testimony of Lisa and her credibility. Likewise, Wild's closing argument did not address the instruction. Rather, Wild attacked the credibility of Lisa and the State's lack of any other witnesses or evidence. Based on the closing arguments, we conclude that they weigh against a finding of harm.

Lisa and Robert were the only witnesses during the guilt/innocence phase of the trial. Lisa gave clear testimony that Wild touched her vagina with his hand and that he penetrated her vagina with his tongue and his finger. She testified that, when she was around Wild, the abuse

happened almost every day and that it went on for years. Lisa also testified that Wild would try to purchase her silence with toys and favors and that he also threatened her with dire consequences should she ever tell anyone about the abuse. Lisa only made an outcry after she accidentally told her friends during a church skating trip. The case turned on the credibility of Lisa, and the jury made the credibility determination regarding her testimony. Based on the evidence, we find that this factor weighs against a showing of harm.

For these reasons, we find that Wild has not established that he suffered any harm because of the erroneous jury charge. As a result, we overrule Wild's second point of error.

## IV. Conclusion

We affirm the trial court's judgments.

Scott E. Stevens
Justice

Date Submitted:     October 10, 2022
Date Decided:       November 1, 2022

Do Not Publish

15